**Dennis J. BOLOGNA, Petitioner,**

v.

**PENNSYLVANIA DEPARTMENT OF LABOR AND INDUSTRY, Respondent.**

Commonwealth Court of Pennsylvania.

Submitted on Briefs Nov. 22, 2002.

Decided Feb. 11, 2003.

Dennis J. Bologna, petitioner, pro se.

James A. Holzman, Harrisburg, for respondent.

BEFORE: COLINS, President Judge, SMITH–RIBNER, Judge, FLAHERTY, Senior Judge.

OPINION BY President Judge COLINS.

Dennis Bologna (Bologna) appeals, *pro se*, from the July 30, 2002 decision of the Department of Labor and Industry's Industrial Board (Board) that affirmed the March 28, 2002 order of the Department of Labor and Industry's Bureau of Occupational and Industrial Safety (Bureau) regarding a facility known as Court Towers Commercial and Apartment Building (the Building), with respect to violations of the law known as the Fire and Panic Act.[1] The Building, which is located at 9 South Mill Street, Ridgway, Pennsylvania, is owned by B.B. & C. Construction, Inc., for which Commonwealth records indicate that Bologna is the chief executive officer and the only officer.

The factual background of this appeal follows. On or about May 8, 2001, the Bureau conducted an inspection of the Building, which was classified as a D–O occupancy used for offices and a C–2 group habitation facility.[2] As a result of

---

1. Act of April 27, 1927, P.L. 465, *as amended,* 35 P.S. §§ 1221–1235.1.

2. A D–O occupancy is an "ordinary occupancy" that involves the manufacture, assembling, warehousing, use, sale, or storage of combustible but not highly flammable products and materials and buildings used for offices and the like. 34 Pa.Code § 50.1(e)(1). A C–2 occupancy is a building, or a part of a

the inspection, an order was forwarded to Bologna on May 17, 2001, containing 29 findings detailing violations of the Fire and Panic Act. The order also provided the appeal procedure and a compliance deadline of September 17, 2001.

On November 15, 2001, pursuant to 34 Pa.Code § 49.13(c), the Bureau issued an order to show cause regarding Bologna's noncompliance. On December 13, 2001, Bologna filed a reply to the order to show cause, in which he requested an extension of time for compliance alleging that: 1) bankruptcy proceedings had commenced, and the Bureau's investigator had been advised of same; 2) the Building had a 25% occupancy rate, compared to its previous 80%–90% occupancy rate; and 3) the Building had $60,000–$70,000 in past-due accounts receivable because of a poor rental market.

At its January 29, 2002 meeting, the Board denied Bologna's request for an open extension of time and notified Bologna of this denial by an order issued on February 6, 2002. The order stated that the filing of bankruptcy does not operate as a stay against a government's enforcement powers under 11 U.S.C. § 362(b)(4) and that bad financial conditions do not warrant an extension of time for compliance under 34 Pa.Code § 49.15(e). On February 20, 2002, Bologna filed an application for reconsideration of the Board's order, in which he restated the contents of his reply and also alleged that: 1) the floors above the second floor of the building were now occupied as the owner's residence; 2) all existing tenants have two means of egress from their apartments or offices; 3) all tenants have smoke alarms in their apartments; 4) there are smoke alarms and fire extinguishers in all stairways and halls; and 5) the Building received a permit from the Department

"years ago" (which in fact was a "certificate of honor" that the Bureau presented to the owner of the Building in 1942 relating to a "perfect safety record" at that time).

On March 18, 2002, the Building was again inspected by the Bureau's investigators who indicated that Bologna had not corrected any of the 29 violations. A hearing concerning the status of the Building and Bologna's reconsideration application was held on March 25, 2002, at which time a Bureau inspector testified that the Building never received a certificate of occupancy and had insufficient fire extinguishers and insufficient emergency lighting. Bologna testified that he was attempting to correct or eliminate the violations with regard to fire extinguishers, emergency lighting, and occupancy of the third and fourth floors of the Building. He also told the Board that plans of the Building would be submitted within 90 days, along with notarized letters attesting that the basement was not being used for storage and occupancy.

After the hearing, the Board gave Bologna the choice of a "formal" or "informal" decision, and Bologna chose the latter. The Board's decision, documented by a written order dated April 4, 2002, reduced, but with conditions, certain requirements set forth in the May 17, 2001 compliance report and order. The Board based its decision upon Bologna's testimony and supporting affidavit as to the use of the Building's third and fourth floors as his personal residence and because the basement of the Building would not be used for occupancy or storage. At the same time, however, the Board's decision noted that by June 28, 2002, Bologna had to correct certain deficiencies, including but not limited to the following: (1) submit Bureau-

building, that is an apartment, multiple dwell-      ing, group home, etc.  34 Pa.Code § 55.1.

approved plans for the Building; (2) adhere to a specific compliance list under C–2 occupancy provided by the inspector pursuant to 34 Pa.Code § 55.61; (3) place properly marked exit signs over each exit of the Building; (4) ensure that windows within 10 feet of both sides of the fire escape had quarter-inch and wire-steel frames pursuant to 34 Pa.Code §§ 50.25(r)(7), 51.25, 55.25 and 58.25; (5) install at least one fire extinguisher (minimum 2–A rating) for each 5,000 square feet or lesser area and install a fire extinguisher (minimum 10–B rating) in each kitchen pursuant to 34 Pa.Code §§ 51.71(a) and (b); (6) ensure that the Building has a minimum of two exits with a reasonable distance between them, and that at least 50% of the required exits shall be exit discharge doors, stair towers, or ramps; (7) install an automatic fire alarm system in the Building's common areas such as the corridors, the basement, and the stairs, and ensure that smoke detectors meet standards allowing the activation of any single detector to sound an alarm throughout the Building; (8) install smoke detectors and fire extinguishers within each apartment unit; (9) install a fire extinguisher in the second-floor common area; and (10) provide a current Bureau certificate of operation for the elevator.

Subsequently, Bologna submitted a notarized letter attesting to the use of the Building's third and fourth floors as a private residence, affirming that the basement has no occupancy except for a barbershop (D–O occupancy) and that it was not utilized for storage. According to the Department, however, as of the date the Board issued its opinion on July 31, 2002,

Bologna had not filed any plans for the facility.

■ On May 2, 2002, Bologna initially appealed the Board's order to this Court and refiled his appeal on or about June 3, 2002.[3] In his appeal, Bologna argued that: (1) the Board erroneously cited him, instead of B.B. & C. Construction, Inc., as the owner of the Building; (2) in 1942, the Building received a "certificate of honor" that is synonymous with a certificate of compliance; (3) the Board and the Bureau refused to disclose the identity of the complainant who allegedly initiated the case against him for building violations; (4) the Building is historical and as such qualifies for the application of special rules; and (5) the Commonwealth leased space in the Building in 1945 and, therefore, the Board knew about the Building and its condition. Additionally, Bologna filed a motion to supplement the record, which on October 22, 2002, was denied by this Court as untimely.

On appeal, Bologna argues that: (1) the Board erred in citing him rather than B.B. & C. Construction, Inc., the corporation that actually owns the Building, and therefore the Board has no jurisdiction over him thereby warranting dismissal of the case against him; (2) despite Bologna's repeated requests, the identity of the complainant was never disclosed, thereby precluding him from presenting an adequate defense; (3) although Bologna made several modifications to the Building, they were ignored by the Board in contravention of what he avers to be his constitutional right to use his private property without unreasonable interference by the Commonwealth; (4) the Board erroneously applied

---

3. Our scope of review in this matter is limited to a determination of whether constitutional rights were violated, whether the decision was rendered in accordance with the law, and whether necessary findings of fact are supported by substantial evidence. *Gnarra v. Department of Labor and Industry Industrial Board,* 658 A.2d 844 (Pa.Cmwlth.1995), *appeal dismissed,* 543 Pa. 483, 672 A.2d 1318 (1996).

the current standard instead of that which existed at the time the Building was placed into use and improperly ignored the "certificate of honor," which Bologna avers, was tantamount to a certificate of occupancy; (5) the Board erroneously ignored the fact that the Commonwealth had leased sections of the Building in the past, thereby giving rise to the presumption that the Commonwealth would not have been a tenant in a Building that failed to meet safety requirements; (6) the Board failed to consider that special standards should apply to the Building as an historical structure; (7) the Board commingled its prosecutorial and adjudicative functions; and (8) the Board erroneously found code violations in meeting rooms and in the basement although the third and fourth floors of the Building were used as Bologna's personal residence and the basement was not used for storage, thereby excluding these areas from the parameters of inspection.

■■■ Upon review, we concur with the Department's averments that Bologna failed to preserve most of the issues he now attempts to raise on appeal before this Court, since he did not raise them below. In *Griffith v. Workers' Compensation Appeal Board (New Holland North America, Inc.)*, 798 A.2d 324, 328 (Pa. Cmwlth.2002), this Court unequivocally stated:

> With respect to the first issue, we conclude that this issue has been waived. Claimant did not appeal this issue to the Board and pursuant to Pa.R.A.P. 1551, no question shall be heard or considered by the Court which was not raised before the government unit. Moreover, we reject Claimant's attempts to overcome his waiver of this issue.
>
> Claimant first argues that because he was pro se, he was unaware that the WCJ's offset was in error and that the Board, knowing he was pro se, should

have raised the WCJ's error sua sponte. It is unfortunate that Claimant's pro se efforts resulted in a failure to properly preserve and raise his challenges to the proceedings below.... However, any lay person who chooses to represent himself in a legal proceeding must assume the risk that his lack of expertise and legal training may prove to be his undoing.

(Citations omitted.) As in *Griffith*, in the present matter, the majority of issues raised by Bologna on appeal have been waived as a result of his failure to preserve them for appeal before the Board. All of Bologna's other arguments, other than those waived, have no merit and reflect total disregard for the safety concerns expressed by the Board with respect to the Building's violations of the Fire and Panic Act. Of relevance in this regard is the following excerpt between various Board members and Bologna during his Board hearing, after Bologna's repeated requests for time extensions within which to complete the compliance renovations:

> Board: I appreciate the Chapter 11 thing. Our problem is there's people in that building. We can't say because you're going through that court proceeding that it's safe for these people to be in the building. You can't come in here and say because you're going there and you're going to draw up a plan. We want to know, and that's what we're saying, when are you going to do something? That's what we want to know ... We can't have people in danger in that building. That's the bottom line. You've got to tell us that in 60 days you're going to have it done or you're not going to have it done ... We're not going to just keep continuing the extensions without you doing it. Obviously those people shouldn't be in there right now, from our standpoint. You need to

give us some true answers ... If you want an extension, you tell us what you're going to do and how long it's going to take you, and then we'll make a decision....

Bologna: First of all, I'd like to say the fact that we eliminated any use of the third and fourth floors by chaining them off, other than my private residence, is to me a show of good faith. We're willing to put that in writing, that nothing will be up there until we get something done. If the inspector can tell me the most important items on the list that he would need done, I could tell you how soon we could have those done.

Board: You don't understand. You're asking us to give you an extension of time for this whole list. But you have no idea when you're going to do anything. It's not up to the inspector. Everything on this list needs to be done. We are not going to give you carte blanche. You can take as long as you want. You can, but then get the people out of the building....

(N.T., Industrial Board Hearing, March 25, 2002, pp. 112–14.) It is evident that Bologna fails to appreciate the public safety considerations at issue with regard to his Building. In *Orth v. Department of Labor and Industry*, 138 Pa.Cmwlth. 443, 588 A.2d 113, 116 , *petition for allowance of appeal denied*, 528 Pa. 619, 596 A.2d 801 (1991), this Court, concurring with the Board, stated:

As the Board points out, the fact that the Orths' vacancy rate exceeded 50% does not negate the hazards against which the Commonwealth seeks to protect its citizens through the Fire and Panic Act. Where an administrative agency has interpreted its own regulations, that interpretation must be given controlling authority unless (1) it is inconsistent or plainly erroneous or (2) it is inconsistent with the underlying legislation.

Within these guidelines, we find no error in the Board's interpretation of the regulation and believe that it furthers the interest of the Commonwealth in providing safe, temporary lodgings for its citizens.

(Citation omitted.) Similarly, based upon the foregoing discussion, in the matter *sub judice*, we perceive no error in the Board's position as to the violations found in Bologna's Building and we affirm its order.

### ORDER

AND NOW, this 11th day of February 2003, the order of the Department of Labor and Industry Industrial Board in the above-captioned matter is affirmed.