IN THE COMMONWEALTH COURT OF PENNSYLVANIA

PSP NE, LLC,                  :
            Petitioner         :
                         :
           v.                 :     No. 576 C.D. 2022
                         :     Submitted: February 7, 2023
Pennsylvania Prevailing Wage    :
Appeals Board,                  :
           Respondent     :

BEFORE:    HONORABLE PATRICIA A. McCULLOUGH, Judge
                  HONORABLE CHRISTINE FIZZANO CANNON, Judge
                  HONORABLE MARY HANNAH LEAVITT, Senior Judge

OPINION
BY SENIOR JUDGE LEAVITT              FILED: March 30, 2023


        PSP NE, LLC (Developer) petitions for review of an adjudication of the Pennsylvania Prevailing Wage Appeals Board (Board) holding that Developer's construction of a facility to be leased to the Pennsylvania State Police (State Police) was a public work subject to the requirements of the Pennsylvania Prevailing Wage Act (Act).[1] In doing so, the Board affirmed a determination of the Department of Labor and Industry's Bureau of Labor Law Compliance (Bureau of Compliance). On appeal, Developer contends that the Board erred in holding that its predevelopment lease with the Commonwealth of Pennsylvania constituted a "public work" within the meaning of the Act because the project will not be financed, in whole or in part, by public funds. For the reasons that follow, we reverse the adjudication of the Board.

        The relevant facts found by the Board, based on the stipulations of Developer and the Bureau of Compliance, follow. Developer owns land in Hanover

---

[1] Act of August 15, 1961, P.L. 987, *as amended*, 43 P.S. §§165-1-165-17.

Township, Luzerne County. On July 22, 2019, the Commonwealth, by the Department of General Services, executed a 20-year lease of a facility to be constructed by Developer and used by the State Police as a barracks and training center. Board Adjudication, 5/17/2022, Finding of Fact (F.F.) ¶¶4, 7, 10. Developer hired "at its own expense" engineers, architects, and others "to develop plans and specifications incorporating the State Police requirements set forth in the Lease." *Id*., F.F. ¶6. Developer selected the contractors to prepare the site and build the facility. *Id*., F.F. ¶13. To help finance the construction, Developer obtained a bank loan in the amount of $15,400,000. *Id*., F.F. ¶15. The bank loan is secured by Developer's land, the facility to be built, Developer's personal guarantee, and an assignment of all leases. *Id*., F.F. ¶17. Developer is required "to provide its personal funds to pay for the entire project" of $17,158,680. *Id*., F.F. ¶15. Upon completion of construction, the State Police will "take occupancy of the building facilities, as Tenant, and begin lease payments[.]" *Id.*, F.F. ¶10.

The predevelopment lease provides that if the Commonwealth terminates or cancels the lease before completion of the 20-year term, the Commonwealth will reimburse Developer "for any unamortized costs of renovations," but this will leave Developer "with a loss of any difference between the total project and unamortized costs." Board Adjudication, 5/17/2022, F.F. ¶11. The "amortized construction costs of the project" are $15,615,940. *Id*., F.F. ¶12.

In response to a request from Developer for confirmation that its construction of the facility to be leased to the Commonwealth was not subject to the Act, the Bureau of Compliance informed Developer that the Act "covers this construction project." Certified Record, Item 1, at 5. The Bureau explained that although Developer "will provide the initial funds for this project, the lease

payments from the State Police will reimburse this initial outlay, and, as such, are the ultimate source for this construction." *Id*. at 6.

On February 14, 2020, Developer filed a grievance with the Board, seeking review of the determination of the Bureau of Compliance. Neither party requested an evidentiary hearing to augment the stipulated facts. Following argument, the Board issued an adjudication denying Developer's grievance and affirming the Bureau's determination.

In reaching this conclusion, the Board was guided by the Pennsylvania Supreme Court's holding in *Pennsylvania National Mutual Casualty Insurance Company v. Department of Labor and Industry*, 715 A.2d 1068, 1074 (Pa. 1998) (*Penn National I*). Therein, the Supreme Court explained that under the Act, a "public work" is one that involves (1) certain work, (2) performed under contract, (3) paid for in whole or part with funds from a public body, and (4) at a cost in excess of $25,000. *Id*. The Board concluded that Developer's construction satisfied all four elements. It emphasized that because Developer's loan agreement required the Commonwealth's lease payments to be sufficient to cover Developer's debt service, this established funding by a public body. Board Adjudication, 5/17/2022, at 10. Specifically, Developer would recover its amortized construction costs of $15,615,940 either through rental payments or reimbursement of unamortized costs should the lease terminate early. *Id*. The Board further observed that the lease required the facility to satisfy State Police design needs; required construction to be completed within a specific timeline; and included a provision, standard in all Commonwealth leases, that "Lessor" had to comply with the Act. For these reasons, the Board concluded that the agreement did not establish a landlord-tenant lease but, rather, a "public work," or construction contract, subject to the Act.

3

Developer appealed the denial of its grievance to this Court.

On appeal,[2] Developer raises eight issues, which effectively turn on the single legal question of whether construction of the facility is public work subject to the Act.[3] Developer argues that the project is not public work, and the Bureau rejoins that it is.[4]

We begin our analysis with a review of the Act. The Act is a remedial statute that ensures that workers employed on public works are paid "[n]ot less than the prevailing minimum wages[.]" Section 5 of the Act, 43 P.S. §165-5. The Act defines "public work" as follows:

> [*C*]onstruction, reconstruction, demolition, alteration and/or repair work other than maintenance work, done under contract

---

[2] This Court's review of an administrative agency's order determines whether findings of fact are supported by substantial evidence, whether constitutional rights have been violated, and whether the determination is in accordance with law. *Bologna v. Department of Labor and Industry*, 816 A.2d 407, 410 n.3 (Pa. Cmwlth. 2003). Our review of questions of law is plenary. *Tomaskevitch v. Specialty Records Corporation*, 717 A.2d 30, 32 (Pa. Cmwlth. 1998). The Court will not overturn an exercise of administrative discretion unless the agency has abused its discretion or acted in an arbitrary or capricious manner. *International Brotherhood of Electrical Workers v. Department of Labor and Industry, Prevailing Wage Appeals Board*, 816 A.2d 1220, 1223 (Pa. Cmwlth. 2003).

[3] Developer states the issues as follows: (1) whether the Board erred, acted arbitrarily, and/or abused its discretion in rendering its May 17, 2022, adjudication; (2) whether Developer made a *prima facie* case, thereby shifting the evidentiary burden to the Bureau of Compliance; (3) whether the Bureau of Compliance met its burden of proof of establishing the Act applies to the lease in question; (4) whether the lease was actually a "public work" construction contract under the Act; (5) whether the rent to be paid by the Commonwealth, per the lease, actually constitutes public financing for construction; (6) whether the Commonwealth, as tenant under the lease, was allocated or assumes any risk of loss for Developer's construction loan obligation or costs for the project; (7) whether the Act applies to Developer as a private developer and landlord using private funds to construct a building it owns and will continue to own; and (8) whether the language of the lease, which is statutorily required to be included in all agreements to which the Commonwealth is a party, is determinative of the Act's applicability. Developer Brief at 3-5.

[4] The Bureau of Compliance filed a notice of intervention in this matter, and the Board notified this Court that it was a disinterested party.

4

and *paid for in whole or in part out of the funds of a public body* where the estimated cost of the total project is in excess of twenty-five thousand dollars ($25,000), but shall not include work performed under a rehabilitation or manpower training program.

Section 2(5) of the Act, 43 P.S. §165-2(5) (emphasis added). It is not disputed that the Commonwealth is a "public body." As summarized by our Supreme Court, the Act makes a "public work" one that meets four requirements:

(1) there must be certain work;

(2) such work must be under contract;

(3) such work must be paid for in whole or in part with public funds; and

(4) the estimated cost of the total project must be in excess of $25,000.

*Penn National I*, 715 A.2d at 1074. Notably, "public work" does not require a "public body" to be directly involved, "only that the project must be paid for in whole or in part with public funds." *Lycoming County Nursing Home Association, Inc. v. Department of Labor and Industry, Prevailing Wage Appeals Board*, 627 A.2d 238, 242 (Pa. Cmwlth. 1993).

In any challenge to a determination of the Bureau of Compliance, the grievant bears the burden of proof. *See* 34 Pa. Code §213.8(j) ("The General Rules [of Administrative Practice and Procedure, 1 Pa. Code §§31.1-35.251,[5]] govern evidentiary hearings. The burden of proof shall be on the grievant."); s*ee also Butler Balancing Company, Inc. v. Department of Labor and Industry, Prevailing Wage Appeals Board*, 780 A.2d 840, 842 n.6 (Pa. Cmwlth. 2001). It is the burden of the

---

[5] Section 213.1 of the Board's regulations states that "[u]nder 1 Pa. Code §31.1 (relating to scope of part), 1 Pa. Code Part II (relating to general rules of administrative practice and procedure) is applicable to the activities of, and proceedings before, the Board, of the Department [of Labor & Industry], except as otherwise provided in this chapter." 34 Pa. Code §213.1.

grievant to adduce evidence that a "predevelopment lease" constitutes a *bona fide* lease. Thereafter, the burden shifts to the Bureau of Compliance to "establish that the economic reality of the transaction is different from its appearance." *500 James Hance Court v. Pennsylvania Prevailing Wage Appeals Board*, 33 A.3d 555, 573-74 (Pa. 2011). The allocation of financial risk is a key aspect of the Bureau of Compliance's burden to prove untoward "evasive drafting" of a lease agreement that was done to avoid the Act. *Id*. at 572. The party with the burden of proof must adduce "sufficient evidence such that, in the absence of something else from the opposing party, he should prevail." *Id*. at 575. Stated otherwise, it is "incumbent upon the opposing party to undermine that case in some way." *Id*. at 576.

With this background, we turn to Developer's argument that the Act does not apply to its construction project because the Commonwealth does not own the land; did not hire Developer to construct the facility for the Commonwealth to own; and did not provide any funding for the construction of the facility that will be leased to the State Police. Developer used its own funds, including a bank loan, to purchase the land and construct the facility to be leased. The only funds ever to be generated from a "public body" will "be in the form of rent" and only after the construction is complete and the State Police takes occupancy. Developer Brief at 11-12. The rent payments merely give the State Police the right to occupy the land and the facility.

Specifically, Developer contends its predevelopment lease with the Commonwealth does not satisfy all of the four elements of a public work. *See Penn National I*, 715 A.2d at 1074. The contract is a landlord-tenant lease and not a contract for construction of "certain work," and no part of the construction will be paid by public funds. Developer did not receive an advance from the

6

Commonwealth to help fund the construction of the facility. The risk of loss associated with an "early termination of the Lease and breach of the Construction Loan" is borne solely by Developer. Developer Brief at 12.

Developer argues that because the record established that the contract constituted a *bona fide* lease, the burden shifted to the Bureau of Compliance "to present evidence that the economic reality of the transaction is contrary to what it appears to be." Developer Brief at 12. However, the Bureau offered no evidence relative to the economic reality of the lease agreement.

In response, the Bureau of Compliance contends that the predevelopment lease has placed the financial risk of the construction upon the Commonwealth because it must cover unamortized construction costs should the lease terminate early. Further, the lease has a potential 30-year duration, should it be extended, which constitutes a real estate transfer, at least for purposes of the tax laws. This supports the Board's conclusion that Developer has been engaged to construct a "public work" within the meaning of the Act. Bureau Brief at 13-14.

The leading precedent is *500 James Hance Court*, 33 A.3d 555, where our Supreme Court considered whether the construction of a building for a charter school was a public work subject to the Act.[6] The charter school's non-profit

---

[6] The project in *500 James Hance Court* was divided into two parts: one was for the construction of the building and the other was for the interior or "fit out" of the building to be used as a charter school. The "fit out" was to be financed by a foundation and, thus, subject to the Act. The construction of the "shell" was privately funded. The Bureau of Compliance took the position that if the project had proceeded under one contract, the entire project would have been subject to the Act. Notably, our Supreme Court determined that "there does not appear to be any reason why parties to a contract or lease cannot modify their relationship to account for legal requirements (such as prevailing wages) which may attach to one, but not another, manner of transacting." *500 James Hance Court*, 33 A.3d at 570. The Supreme Court found a "strong and logical" demarcation between the construction of the building shell and the customizing of the interior. *Id*. at 570-71. Accordingly, it held part of the construction project was subject to the Act and part was not.

7

foundation provided financing for the construction of the building through bonds issued by a public authority. The predevelopment lease between the developer and the charter school had a duration of 24 years, with an option to purchase after the first 5 years, and the lease payments were expected to cover the cost of construction within 6 years.[7] The building was to be used exclusively as a charter school, and approximately a quarter of the total construction cost was attributed to customizing the building for the particular needs of the charter school.

The Supreme Court explained that the "labels appended to transactional documents do not exclusively determine the applicability of regulation under the [] Act, as the potential for evasion and artifice is too great. Rather, as in other settings, *the economic reality of the transaction should control*." *500 James Hance Court*, 33 A.3d at 572 (emphasis added). To that end, the Supreme Court considered whether the charter school's rental payments under the lease, expected to cover construction costs in six years, were tantamount to public financing. In concluding that the rental payments did not constitute public funding, the court explained as follows:

> [T]here is little indication that the lease payments by the Foundation were designed to be anything other than compensation for use of the building . . . . [T]he Bureau of Compliance highlights that, at oral argument, Appellees indicated that the lease payments would allow construction costs to be recouped in six years . . . . *However, it is evident that few office buildings would be built if the construction costs, including the cost of servicing the construction loan, could not ultimately be recouped by anticipated lease payments within a reasonable time frame.* Even to the degree this factor focuses on the prospect that the Foundation's lease payments will, alone, allow for such

---

[7] Notably, unlike the lease in *500 James Hance Court*, 33 A.3d 555, the Commonwealth does not have an option to purchase the facility after five years.

8

recoupment, such a circumstance remains of little probative value relative to the question of whether the lease is a disguised construction contract, absent proofs regarding whether a six-year recoupment period is substantially shorter than the industry norm for building shells of the type involved here.

*Id*. at 574 (emphasis added). The Supreme Court further explained that the Bureau of Compliance had given no weight to the fact that the premises reverted to the developer at the end of the lease:

Absent a finding – or even an allegation – that the building's useful life is likely to be no greater than the 24-year lease term, we find this reasoning counter-intuitive because such reversion facially supports Appellees' position that the lease is a *bona fide* one and not a construction contract.

*Id*. at 575. In short, under *500 James Hance Court*, a developer's recoupment of its costs of construction through rental payments does not transform a lease into a "disguised construction contract." *Id.*

In *Ursinus College v. Prevailing Wage Appeals Board*, 280 A.3d 1113, 1123 (Pa. Cmwlth. 2022), *petition for allowance of appeal granted*, (Pa., No. 18 MAP 2023, filed February 22, 2023), this Court considered whether a $23,000,000 construction project undertaken by a private college, but financed by bonds issued by a public authority, constituted a public work subject to the Act. The Board determined that because the construction was funded by loans from a public authority, it was paid for by a public body. Accordingly, the prevailing wage requirements of the Act applied to the construction.

This Court reversed the Board's adjudication. The bond documents required the public authority to transfer the funds to a trustee, which transfer occurred before the college received any funds. Accordingly, the college used funds disbursed by the trustee, and not by the public authority, to pay for the project. The

9

economic reality of this transaction was that the project was not funded "out of the funds" of a public body. We rejected the Board's reasoning that the project was subject to the Act because the college "would not have had this funding stream available *but for* the existence of the [a]uthority and its coordination of the funding through its statutory powers as a public body." *Ursinus College*, 280 A.3d at 1123 (emphasis added). We explained that Section 2(5) of the Act is not triggered by a "but for" test but, rather, requires the work be paid for "out of the funds" of the public body. The college, not the public authority, bore the risk for repayment of the bonds. As such, the economic reality of the transaction revealed that the project was not a public work subject to the Act.

Here, as in *500 James Hance Court*, the predevelopment lease states that the State Police shall pay rent "for the use and occupancy of the [p]remises" and not for construction. Reproduced Record at 37 (R.R. __).[8] As in *Ursinus College*, Developer has funded the cost of construction and solely bears responsibility for the repayment of the construction loan. Developer and the Bureau of Compliance stipulated:

> [T]he Project has been purchased and funded totally through the use of [Developer's] private funds, and that *no funds will be provided directly by the Commonwealth for the purchase, development and construction of the facilities.*

Stipulated Facts, ¶20; R.R. 30 (emphasis added). The parties agreed that Developer bears the "risk of losing substantial funds" notwithstanding the Commonwealth's agreement to reimburse Developer for unamortized costs should the lease be

---

[8] Rule 2173 of the Pennsylvania Rules of Appellate Procedure specifies: "[T]he pages of . . . the reproduced record . . . shall be numbered separately in Arabic figures . . . thus 1, 2, 3, etc., followed in the reproduced record by a small a, thus 1a, 2a, 3a, etc." PA. R.A.P. 2173. Because Developer's Reproduced Record page numbers are not followed by a small "a," for ease of reference, this opinion refers to the reproduced record pages as numbered by Developer.

10

terminated early. Stipulated Facts, ¶11; R.R. 30. In short, the economic reality is that Developer provided the funds for the construction of the facility to be leased to the Commonwealth.

Although the predevelopment lease requires the Commonwealth to reimburse Developer for any unamortized costs after "the expiration of at least fifty percent (50%) of the initial term of this Lease," *i.e.*, 10 years, this did not transform the lease into a disguised construction contract. Lease, III, ¶8; R.R. 38. An early termination of the lease at the end of year 10, for example, would leave unamortized costs substantially below $15,615,940, possibly as little as half that amount. *See* Developer Brief at 19-20. Should the Commonwealth become responsible for the unamortized portion of the costs, Developer will nevertheless be liable for as much as $10 million on the bank loan. *Id.* As in *Ursinus College*, construction of the facility does not come out of funds of a public body, and the risk for repayment of the loan is not borne by a public body.

The Board erred in holding that the lease was not a *bona fide* lease. Improperly, the Board gave no weight to the fact that the Developer holds a reversionary interest in the building under construction. In *500 James Hance Court*, 33 A.3d at 575, our Supreme Court observed that such a reversionary interest in a predevelopment lease to the developer "facially" supports the conclusion that "the lease is a *bona fide* one and not a construction contract."

Because Developer established a *bona fide* lease, the burden shifted to the Bureau of Compliance. It did not present any evidence that the contractual arrangement was not as it seemed. The Bureau presented no evidence, for example, that the reversionary interest was fictional because the building would cease to be useful by the end of the lease term. Likewise, it presented no evidence that

11

Developer's recoupment of construction costs by rental payments was "substantially shorter than the industry norm." *500 James Hance Court*, 33 A.3d at 574.

We reject the Board's suggestion that the standard lease appended to the agreement is relevant to the determination of whether the predevelopment lease involves a public work. Paragraph 32 of "Attachment A," "Lease *Standard* Terms and Conditions," relates to "Payment of Prevailing Minimum Wages." It states, in relevant part, as follows:

> *Lessor and Lessor's contractor(s) must comply* with the following conditions, provisions, and requirement in the construction of the building, substantial rehabilitation of the building and/or substantial alterations to the Premises:
>
> (a) *Lessor and Lessor's contractors* shall pay at least the wage rates as determined by the Secretary of the Pennsylvania Department of Labor and Industry and *shall comply with the conditions of the* [*Act*] and the regulations issued thereto, to assure the full and proper payment of the rates.

R.R. 52 (emphasis added). Additionally, Developer and the Bureau of Compliance stipulated:

> Section 9.101(a) of [the Board's regulation, 34 Pa. Code §9.101(a),] requires that any and all agreements in which the Commonwealth is a party contain language requiring compliance with the Act. Accordingly, as the Commonwealth is a party to the Lease, it satisfied this statutory requirement by including language that work performed comply with the Act.

Stipulated Facts, ¶8; R.R. 29.

The question of whether Developer has a contractual obligation to pay prevailing wages was not before the Board, and it is not before the Court in this appeal. The Board determines questions arising under the Act; its jurisdiction does

12

not extend to matters of contract interpretation and dispute. Likewise, this Court does not determine what, if any, contractual obligation was undertaken by Developer in Paragraph 32 of Attachment A.

Finally, the Bureau of Compliance argues that the predevelopment lease effected a real estate transfer under Section 1102-C of the Tax Reform Code of 1971,[9] which treats a build-to-suit lease with a term of 30 years as a transfer that triggers a realty transfer tax. Here, the lease agreement provides for one, 20-year term followed by two, 5-year renewal terms. The Bureau of Compliance asserts that a 30-year lease is not typical in a landlord-tenant relationship, which supports the conclusion that the nature of the contract is not a lease between a landlord and tenant.

We reject this argument. First, the Board did not base its adjudication on this argument. Second, renewal of the lease agreement beyond the initial 20-year term is speculative, not certain. However, even assuming the lease effected a real estate transfer for purposes of the tax laws, this is not a factor to be used to determine whether the lease is a construction contract for a public work. *Penn National I*, 715 A.2d at 1074.

Developer made a *prima facie* case that its lease was a *bona fide* lease by showing that funding for construction of the facility to be rented did not come from a public body. Rather, Developer bears the financial risk, and it retains a reversionary interest in the land and the buildings. It was the Bureau of Compliance's burden to present evidence to "establish that the economic reality of the transaction is different from its appearance," *500 James Hance Court*, 33 A.3d at 573-74, and it did not do so. That Developer expects, in time, to recover costs of

---

[9] Act of March 4, 1971, P.L. 6, *as amended*, added by the Act of May 5, 1981, P.L. 36, 72 P.S. §8102-C.

construction did not convert the *bona fide* lease into a construction contract. As our Supreme Court has explained, if developers did not expect to cover their construction costs with rental payments, few commercial buildings would ever be built. *Id.* at 574. The Bureau of Compliance presented no evidence that the timeline for Developer's expected recoupment of construction costs was "substantially shorter than the norm." *Id.*

For these reasons, we reverse the Board's determination that the Act applies to Developer's construction of a building that will be leased to the Commonwealth.

_____
MARY HANNAH LEAVITT, President Judge Emerita

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

PSP NE, LLC,                                  :
                    Petitioner               :
                                             :
         v.                                  :      No. 576 C.D. 2022
                                             :
Pennsylvania Prevailing Wage                 :
Appeals Board,                               :
                    Respondent               :

## **O R D E R**

AND NOW, this 30th day of March, 2023, the May 17, 2022, adjudication of the Pennsylvania Prevailing Wage Appeals Board is REVERSED.


_____
MARY HANNAH LEAVITT, President Judge Emerita