# PENNSYLVANIA STATE POLICE, BUREAU OF LIQUOR CONTROL ENFORCEMENT

v.

# GOODFELLAS, INC., t/a Goodfellas, Appellants.

Commonwealth Court of Pennsylvania.

Submitted on Briefs March 5, 2004.

Decided May 28, 2004.

Frederick J. Fanelli, Pottsville, for appellants.

Roy Harkavy, Breinigsville, for appellee.

BEFORE: McGINLEY, J., LEAVITT, J., and MIRARCHI, JR., Senior Judge.

OPINION BY Senior Judge MIRARCHI.

Goodfellas, Inc., t/a Goodfellas (Licensee) appeals from the order of the Court of Common Pleas of Schuylkill County (trial court) that denied Licensee's appeal from the decision of the Pennsylvania Liquor Control Board (Board) imposing a fine and license suspension upon Licensee for several violations of the Liquor Code[1] occurring on various dates. We affirm.

Licensee is a holder of a restaurant liquor license and amusement permit issued by the Board. On September 7, 2001, the State Police issued to Licensee a two-count citation pursuant to Section 471 of the Liquor Code, 47 P.S. § 4–471. The first count charged that Licensee violated Section 493(1) of the Liquor Code, 47 P.S. § 4–493(1), on July 12, 2001, by selling, furnishing, and/or giving, or permitting such sale, furnishing, or giving, of alcoholic beverages to a visibly intoxicated patron. The second count charged that Licensee violated the Board's regulations at 40 Pa. Code § 5.32(a) on June 24, 2001 and July 13, 2001, by permitting the use of a loudspeaker or similar device on the outside of its licensed premises, whereby "the sound of music" or other entertainment, or the advertisement thereof, could be heard outside of the premises.

The State Police issued a second citation to Licensee on September 18, 2001, charging that on August 12, 2002, Licensee violated Section 5.32(a) of the Board's regulations by permitting the use of a loudspeaker or similar device on the outside of its licensed premises, whereby "the sound of music" or other entertainment, or

---

1. Act of April 12, 1951, P.L. 90, *as amended,* 47 P.S. §§ 1–101—8–803.

the advertisement thereof, could be heard outside of the premises.

A hearing was held on both citations before an Administrative Law Judge (ALJ) pursuant to Section 471 of the Liquor Code. The ALJ sustained the citations, ordered Licensee to pay a fine of $1200, and imposed a one-day license suspension. The Board affirmed, and Licensee filed a timely appeal with the trial court, which convened a hearing *de novo*.

At the hearing, Officer Christopher Keisling, a liquor control enforcement officer with the State Police, testified that on July 12, 2001, he witnessed a patron at Licensee's establishment use slurred speech, fall off his barstool, and stagger when he walked. He thereafter observed the bartender serve this individual two light beers and a "shot" of whiskey. In rebuttal, Licensee offered the testimony of the bartender, Meredith Hannan, who testified that she had been trained in the safe serving of alcohol, that she did not observe the patron she served to be visibly intoxicated, and that, in fact, this patron is slower witted than most people, with a voice that could be mistaken for slurred speech, and has an unusual gait. The trial judge determined that the testimony of Officer Keisling was more credible than that of Ms. Hannan. He noted that Officer Keisling had been trained to be an *impartial* observer when recognizing intoxicated persons, and he further noted that Ms. Hannan, as an employee of Licensee, was not impartial.

Officer Keisling also testified that on June 24, 2001, he visited Licensee's premises to investigate a noise complaint. He observed a rock band playing outside of Licensee's premises, the source of the noise, and also individuals on Licensee's premises collecting a cover charge. Although the band was not on Licensee's premises, it faced a temporary extension of

Licensee's premises that had been granted by the Board. Consequently, the band also faced and played to Licensee's patrons. The band consisted of a lead singer, a guitar player, a bass guitar player, and a drummer, and its music was conveyed through electric amplifiers. Officer Keisling testified that he could hear the band's music 400 yards north of Licensee's premises and 300 yards south of them.

Officer Keisling further testified that on July 13, 2001, he again visited Licensee's premises and noticed a rock band performing on the same area as the previous band, outside of but adjacent to Licensee's extended premises. Officer Keisling testified that he asked the person collecting money at Licensee's premises whether he could go into the bar, but not the extended area, without paying a cover charge. He was told that he could not. At approximately 10:45 p.m. that evening, Officer Keisling conducted a sound check of the area and determined that the band's music could be heard 400 yards north and 300 yards south of Licensee's premises.

Officer Keith Knock, a liquor control enforcement officer with the State Police, testified that on August 12, 2001, he visited Licensee's premises to investigate a complaint of loud noise coming from the area of Licensee's premises. Officer Knock observed a rock band performing with amplified music at the area adjacent to Licensee's premises and also noticed a sign on Licensee's premises advertising such bands. When Officer Knock attempted to enter Licensee's bar, he was stopped by a staff person collecting money at the outside of the extended premises. This person informed Officer Knock that he could not enter the bar without paying a cover charge.

Also introduced into evidence was Licensee's February 20, 2001 application to the Board for a temporary extension of its

licensed premises. The diagram attached to the application designated the area adjacent to the proposed extended licensed area as "Unlicensed Area—Band or Disc Jockey."

Based upon the above evidence, the trial court found that Licensee had violated Section 493(1) of the Liquor Code and Section 5.32(a) of the Board's regulations, and imposed a one-day suspension for Licensee's violation of Section 493(1), and a collective fine of $1200 for the three violations of Section 5.32(a). This appeal followed. This Court's scope of review on appeal is limited to determining whether the trial court, in its *de novo* review, abused its discretion or committed an error of law. *Pennsylvania State Police, Bureau of Liquor Control Enforcement v. Wilner,* 687 A.2d 1216 (Pa.Cmwlth.1997).

Licensee argues that the trial court erred by (1) finding violations of Section 5.32(a) of the Board's regulations when the evidence showed that music did not emanate from the licensed premises and when the evidence failed to establish that the musicians were employed by or associated with Licensee, and (2) ignoring the uncontroverted testimony of Ms. Hannan in favor of a witness with less knowledge of the patron allegedly served alcoholic beverages while obviously intoxicated.

■ Licensee first argues that the Board misinterpreted or misapplied Section 5.32(a) of its regulations, or that this provision is constitutionally overbroad. Section 5.32(a) provides: "A licensee may not use or permit to be used inside or outside of the licensed premises a loudspeaker or similar device whereby the sound of music or other entertainment, or the advertisement thereof, can be heard on the outside of the licensed premises." Licensee contends that it could not have been found to be in violation of this section when the evidence established that the band emitting the music was not on its premises, that no evidence established that Licensee was using a loudspeaker or similar device, and that no evidence established that Licensee hired or directed the band. Further, Licensee contends that the Board's interpretation of "outside the licensed premises" is overly broad if it is to include land that is not a part of the licensed premises.

Licensee also attempts to draw an analogy between the conduct for which it was cited and the factual circumstances in *Old Express Limited Appeal,* 70 Pa.Cmwlth. 382, 453 A.2d 679 (1982). In *Old Express Limited,* we determined that a licensee could not be found in violation of the Liquor Code on evidence that minors were discovered by agents of the Board to be in the possession of and consuming malt beverages while in the vicinity of the licensed premises. At the time of the incident, the licensee was managing an "Oktoberfest" that was being held in a large tent. The minors were discovered in the southernmost corner of an adjacent parking lot. No evidence was introduced regarding the source of the alcohol they were drinking or whether the licensed premises extended to the parking lot.

Licensee's arguments, however, fail to fully comprehend Section 5.32(a), ignore critical factual findings, and draw an unconvincing parallel to the holding in *Old Express Limited.*[2] With respect to Licensee's argument that the evidence failed to establish that it hired or arranged for the bands, Section 5.32(a) provides that a licensee "may not use or *permit* to be used" loudspeakers or similar devices em-

---

2. Moreover, the authoritative value of *Old Express Limited* is attenuated by the fact that the panel decision consisted of a "majority" opinion by Judge Rogers, a concurring opinion by Judge Doyle, and a dissenting opinion by Judge MacPhail.

itting sound outside of the licensed premises. (Emphasis added.) Moreover, Section 5.32(g) provides: "The restrictions in this section [5.32] apply not only to the licensee, but to partners, officers, directors, servants, agents and employes of a licensee." Quite clearly, the trial court reasonably deduced from the evidence that Licensee, even if not the party directly engaging the bands, was a party that contributed to the engagement of the bands, which used amplified sound to entertain Licensee's patrons on the licensed premises. Thus the trial court did not err when it determined that Licensee permitted to be used loudspeakers or similar devices that emitted the sound of music and related noise outside of the licensed premises.

 Licensee's argument that the term "outside of the licensed premises" is vague or overbroad is similarly without merit. First, we note that Licensee has failed to cite any authority in support of its argument. Second, we note that an agency's interpretation of its own regulations is controlling authority unless such interpretation is inconsistent or plainly erroneous, or if it is inconsistent with the underlying legislation. *Bologna v. Department of Labor & Industry*, 816 A.2d 407 (Pa.Cmwlth. 2003). We have held that Section 5.32(a) is a legitimate exercise of the Board's power to implement the legislative directive under Section 104 of the Liquor Code, 47 P.S. § 1–104, to protect the public welfare, health, *peace,* and morals of the Commonwealth's citizens. *Two–O–Two Tavern, Inc. Appeal,* 89 Pa.Cmwlth. 373, 492 A.2d 502 (1985). There is plainly no error in the trial court's determination that Licensee violated Section 5.32(a) by permitting bands that it advertised and collected a cover charge for to set up amplified sound systems "outside" of the licensed premises for the entertainment of patrons on or at the licensed premises, even though the bands and their amplified sound systems were not on the licensed premises themselves. This is hardly an overbroad application of the regulation. Licensee's behavior falls cleanly under the provisions of Section 5.32(a) and is clearly governed by the Liquor Code and the Board's regulations promulgated thereunder.

Licensee's contention that *Old Express Limited* supports the conclusion that it could not be in violation of Section 5.32(a) because the bands and their amplified sound systems were not on the licensed premises is clearly inapposite. *Old Express Limited* and a related case cited by Licensee, *Pennsylvania Liquor Control Board v. Abraham,* 88 Pa.Cmwlth. 244, 489 A.2d 306 (1985), both involve violations of Section 493(1) of the Liquor Code prohibiting, among other things, the sale or furnishing, or permitting the sale or furnishing of liquor or malt beverages to any minor. Licensee focuses upon evidence in these cases pertaining to whether the minors were on or off the licensed premises and how that evidence affected the outcome of the case. Such evidence, however, in each case, was simply subordinate to the controlling issue of whether the evidence as a whole supported the determination that the licensee violated Section 493(1). These cases do not stand for the proposition that any violation of the Liquor Code or the Board's regulations thereunder is limited to activity occurring on licensed premises. Licensee's argument that the trial court erred by determining that it violated on three occasions Section 5.32(a) of the Board's regulations is accordingly without merit.

 Next, Licensee argues that the trial court erred by accepting the testimony of Officer Keisling over that of its witness with respect to the citation alleging a violation of Section 493(1) of the Liquor Code. As fact finder, the trial court is free to make findings on the evidence and reach its own conclusions in citation/enforcement appeals under Section 4–471 of the Liquor

Code. *Pennsylvania Liquor Control Board v. Bartosh,* 730 A.2d 1029 (Pa. Cmwlth.1999). Our review of evidentiary issues is to determine whether substantial evidence supports the trial court's factual findings. *Id.* Licensee is asking us to go far beyond our scope of review and invade the province of the trial court as fact finder. We may not, as an appellate body, upset the trial court's credibility determinations. *Bobotas v. Pennsylvania Liquor Control Board,* 46 Pa.Cmwlth. 537, 408 A.2d 164 (1979). Here, the trial court fully articulated why it accepted the testimony of Officer Keisling over that of Ms. Hannan. Licensee impermissibly argues that the record should be read so that the testimony Ms. Hannan should be accepted over that of Officer Keisling.

For the above reasons, the trial court's order is affirmed.

### ORDER

AND NOW, this 28th day of May, 2004, the order of the Court of Common Pleas of Schuylkill County in the above-captioned matter is hereby affirmed.