IN THE COMMONWEALTH COURT OF PENNSYLVANIA

| | | |
|---|---|---|
| Wood Brothers Bar, Inc., | : | |
| Appellant | : | |
| | : | |
| v. | : | Nos. 1406 and 1407 C.D. 2021 |
| | : | |
| Pennsylvania State Police Bureau | : | |
| of Liquor Control Enforcement | : | Submitted: March 8, 2024 |

BEFORE:    HONORABLE RENÉE COHN JUBELIRER, President Judge
HONORABLE ELLEN CEISLER, Judge
HONORABLE MATTHEW S. WOLF, Judge

OPINION NOT REPORTED

MEMORANDUM OPINION
BY JUDGE CEISLER                                          FILED: April 4, 2024

Wood Brothers Bar, Inc. (Licensee), appeals the November 9, 2021 order of the Court of Common Pleas of Philadelphia County (trial court), denying, in part, Licensee's appeal from a decision of the Pennsylvania Liquor Control Board (PLCB), which found Licensee served a visibly intoxicated person (VIP), in violation of Section 493(1) of the Liquor Code.[1] The trial court granted, in part, Licensee's appeal by modifying the fine imposed from $650.00 to $50.00, because Licensee had no similar violations within the preceding four-year period. Additionally, the trial court affirmed the PLCB's decision dismissing as untimely Licensee's appeal of a citation issued for violating the restrictions on amplified music set forth in Section 493(34) of the Liquor Code.[2]

---

[1] Act of April 12, 1951, P.L. 90, *as amended*, 47 P.S. § 4-493(1).

[2] 47 P.S. § 4-493(34). Section 493(34) of the Liquor Code prohibits a licensee from using a loudspeaker or other device that allows the sound of music or other entertainment to be heard beyond the licensee's property line.

Also before this Court is a Motion to Quash Licensee's appeal filed by the Pennsylvania State Police (PSP) Bureau of Liquor Control Enforcement (BLCE), which argues that Licensee failed to preserve the issues raised in its appeal because Licensee's Statement of Errors Complained of on Appeal (Statement of Errors) was untimely.

The issues before this Court are whether Licensee waived the issues raised in this appeal, having filed its Statement of Errors one day late, or whether Licensee's Statement of Errors should be accepted *nunc pro tunc*. Should this Court grant Licensee *nunc pro tunc* relief, Licensee argues that the trial court's findings of fact are not supported by substantial evidence. After careful review, we grant BLCE's Motion to Quash Licensee's appeal.[3]

## I. Background

Licensee operates Woody's, a bar located in Philadelphia, Pennsylvania. On April 3, 2018, the BLCE issued a citation alleging that a VIP was served alcohol at Woody's on January 17, 2018, in violation of Section 493(1) of the Liquor Code.

---

[3] Licensee's brief does not address whether the trial court erred in dismissing Licensee's appeal of the amplified music violations as untimely. Therefore, this issue is waived, and we will not address it further, or summarize the evidence relating to the amplified music violations. *Browne v. Dep't of Transp.*, 843 A.2d 429, 435 (Pa. Cmwlth. 2004) (waiver occurs when a party elects to file a brief but fails to effectively set forth argument on an issue).

Even if Licensee had not waived the issue, it would not be entitled to *nunc pro tunc* relief, which is appropriate where an appeal is untimely due to non-negligent circumstances, as they relate to the appellant or the appellant's counsel, where the appellant's notice of appeal was filed shortly after the expiration date, and where the appellee is not prejudiced by the delay. *Criss v. Wise*, 781 A.2d 1156, 1159 (Pa. 2001) (internal citations omitted). Licensee argued before the trial court that it received an administrative law judge's (ALJ) adjudication of the amplified music violations in the same envelope as the ALJ's VIP adjudication. Licensee mistakenly believed the enclosed papers only related to the VIP adjudication, and, therefore, its appeal of the amplified music violations was filed with the PLCB six days late. Licensee's failure to thoroughly inspect the contents of the envelope mailed by the ALJ does not constitute non-negligent circumstances that warrant an appeal *nunc pro tunc*.

The ALJ conducted a hearing on January 22, 2020, at which the BLCE presented the testimony of Michelle Cooke, a liquor enforcement officer with the BLCE. Licensee presented the testimony of Rob Cosme, a former bartender at Woody's, who worked on the evening of January 17, 2018, and Martin Gillespie, a supervisor for Woody's who also worked that evening.

Officer Cooke testified that she entered Woody's on January 17, 2018, at approximately 8:00 p.m., accompanied by her field training officer, John Bernesky. Officer Cooke's attention was drawn to a male patron named Sean[4] sitting four barstools to her right, who swayed on a barstool and "looked very unstable." Reproduced Record (R.R.) at 27a. A can of Red Bull and a cocktail glass sat on the bar in front of him. Officer Cooke overheard Sean speaking with the bartender, Mr. Cosme, and she observed that Sean's speech was slurred. Sean ordered two shots, one of which he consumed. Mr. Cosme drank the other shot. Officer Cooke determined that Sean was visibly intoxicated when he stumbled after attempting to stand. Sean appeared to have difficulty putting his jacket on and he staggered while walking to the exit door. Officer Cooke overheard Sean say prior to exiting the bar, "thank God I'm walking home[,] I'm drunk." *Id.* at 35a. At the time, Sean was approximately five feet from Officer Cooke and three feet from Mr. Cosme, who stood at the register. Officer Cooke observed Sean smoke a cigarette in the designated smoking area located outside and reenter the premises. Officer Cooke stated that Sean "almost missed" the barstool when he sat down. *Id.* at 32a. Mr. Cosme approached and took Sean's order, which consisted of "a very generous amount" of Ketel One vodka topped with Red Bull. *Id.* After consuming his beverage, Sean "stumbled over" to the stage to participate in a karaoke event taking

---

[4] Officer Cooke did not speak with the patron, but he responded to the name "Sean" when called to participate in karaoke. Reproduced Record (R.R.) at 48a.

place that night. *Id.* at 33a. Officer Cooke described Sean as staggering and "tripping over his own feet." *Id.* She advised that Sean's singing was unintelligible, "like there were marbles in his mouth[,]" and he could not keep up with the lyrics on the karaoke screen. *Id.* at 34a. After Sean finished singing, he "staggered back to his barstool." *Id.* Officer Cooke's investigation lasted an hour. She stated that she had eyes on Sean throughout the hour-long investigation.

On cross-examination, Officer Cooke acknowledged that she had only been an officer for a month on January 17, 2018, and that this was her first investigation of a VIP. Officer Cooke agreed that she did not know what Sean had been drinking when she first arrived at Woody's. Officer Cooke also agreed that she did not communicate with Sean during the one-hour investigation, and she did not obtain Sean's blood alcohol content that night.

Mr. Cosme testified that Woody's had between 10 and 12 patrons on January 17, 2018, and that he was the only bartender working that night. On a busy night, Woody's typically has over 100 patrons. Mr. Cosme did not recall seeing Officer Cooke, but he did remember seeing Sean. Mr. Cosme admitted drinking a shot with Sean, which resulted in the termination of his employment with Woody's. Mr. Cosme acknowledged having served Sean a two-ounce shot of vodka and a "vodka Red Bull," but he denied that Sean was visibly intoxicated at the time. *Id.* at 72a. Mr. Cosme was certified by the Responsible Alcohol Management Program (RAMP), during which he received training on how to identify a VIP. Mr. Cosme estimated that during a busy shift, he would refuse service to at least 10 patrons based on a determination that they were visibly intoxicated.

Mr. Gillespie testified that he was seated at the bar in Woody's for a business meeting that began at 7:00 p.m. and lasted for two hours. Mr. Gillespie also met

4

with an alcohol distributor later that evening. He did not notice any patrons who could be described as stumbling or falling and visibly intoxicated.

An ALJ for the PLCB sustained the citation and ordered Licensee to comply with RAMP for one year and pay a fine of $650.00. Licensee filed a timely appeal to the PLCB, which sustained the ALJ's adjudication. Licensee appealed to the trial court, which considered the record before the ALJ as well as testimony presented during an October 26, 2021 *de novo* evidentiary hearing.

Officer Cooke testified briefly during the October 26, 2021 hearing that she worked as a cocktail waitress prior to her employment with the BLCE. In her capacity as a cocktail waitress, Officer Cooke had occasion to observe intoxicated individuals. She also received RAMP training in that position, which enabled her to identify individuals who are visibly intoxicated. Officer Cooke conceded that the first citation she issued as an officer with the BLCE was the VIP violation stemming from the January 17, 2018 investigation. Officer Cooke's decision to issue the VIP violation citation, however, was made in consultation with Officer Bernesky.

Mr. Gillespie also testified before the trial court on October 26, 2021. Mr. Gillespie advised that, prior to his employment at Woody's, he worked as a police officer in Florida, and was familiar with identifying individuals who were intoxicated. Mr. Gillespie stated that determining whether an individual is intoxicated requires interaction with that person, such as observing how the individual responds to questions and whether he or she smells of alcohol. Mr. Gillespie described the interior design of Woody's as an open concept, which allowed one to see the entire space from any seat. Regarding the evening of January 17, 2018, Mr. Gillespie did not recall seeing anyone fitting Sean's description in the

5

bar, and Mr. Gillespie did not see any visibly intoxicated patrons during his shift. Mr. Gillespie did not observe Mr. Cosme drink a shot with Sean.

Based on the record from the ALJ and the testimony presented at the *de novo* hearing, the trial court affirmed the PLCB's decision on the VIP violation but reduced the fine from $650.00 to $50.00. Licensee filed a Motion for Reconsideration, which the trial court denied. Following Licensee's appeal to this Court, the trial court issued an order on December 14, 2021, directing that Licensee file its Statement of Errors within 21 days. The trial court's order specified that "[a]ny issues not properly included in the Statement [of Errors] timely filed and served pursuant to Pa.R.A.P. 1925(b) shall be deemed waived." Original Record (O.R.), Item No. 19. Licensee filed its Statement of Errors one day late, on January 5, 2022.

In its opinion filed pursuant to Pa.R.A.P. 1925(a), the trial court acknowledged the untimeliness of Licensee's Statement of Errors. However, given the delay was only one day and the 21-day period for filing the Statement of Errors included the holiday season, the trial court elected to address the merits of Licensee's appeal and "leave it to" this Court to determine whether Licensee waived the issues raised. R.R. at 368a. As to the VIP violation, the trial court found that Officer Cooke testified consistently and with specific detail regarding the evening of January 17, 2018, and that no part of her testimony cast doubt on her memory. The trial court rejected any suggestion that Officer Cooke's inexperience, in the absence of contradictory testimony, should affect her credibility. Additionally, the trial court accepted that Officer Cooke would not have taken any action against Licensee without input from Officer Bernesky. Based on the record before the ALJ and the live testimony presented at the October 26, 2021 *de novo* hearing, the trial court

6

concluded that the evidence "overwhelmingly demonstrated" that Licensee knowingly served a VIP. *Id.* at 366a.

The PLCB filed a Motion to Quash Licensee's appeal, arguing that Licensee waived all issues raised, having filed an untimely Statement of Errors. This Court granted the PLCB's Motion to Quash on June 10, 2022. Licensee filed a Motion for Reconsideration, arguing that its counsel made several unsuccessful attempts to file the Statement of Errors on the evening of January 4, 2022. Because the Office of Judicial Records (OJR) was closed for the day, Licensee's counsel was unable to obtain technical assistance. Therefore, Licensee's counsel emailed the Statement of Errors to the trial court that evening. The Statement of Errors was successfully filed the next morning, on January 5, 2022. Based on Licensee's averments, this Court remanded the matter to the trial court to determine whether Licensee should be permitted to file its Statement of Errors *nunc pro tunc.*

The trial court conducted hearings on September 28, 2022, and October 12, 2022, at which Steve Wulko, the former deputy director of the OJR, testified regarding the OJR's electronic filing system.

Licensee's counsel, John Griffin, advised that his secretary attempted to file the Statement of Errors at 10:12 p.m. on January 4, 2022; however, technical issues arose, and the filing was not completed. As a result, Mr. Griffin emailed a copy of the Statement of Errors to the trial court and successfully filed the Statement of Errors the next day. Mr. Griffin argued that the purpose of a Statement of Errors is to provide the trial court with the issues that a party intends to raise on appeal, which the trial court may then address in its 1925(a) opinion. Mr. Griffin argued that the trial court did not suffer any prejudice by the one-day delay in filing the Statement of Errors, as the trial court did, in fact, address the merits of Licensee's appeal in its

7

1925(a) opinion. Counsel for the PLCB countered that the standard for *nunc pro tunc* relief would require an administrative breakdown on the OJR's part, and Pa.R.Civ.P. 205.4(e)(1) expressly provides that a party filing documents electronically is responsible for any delay or disruption in filing unless the delay is "caused by the failure of the electronic filing system's website."

Mr. Wulko testified that he is familiar with the OJR's electronic filing system. To his knowledge, the system did not experience any system outage on January 4, 2022, and the OJR's information technology (IT) department did not record any such outage having occurred that night. Mr. Wulko reviewed screenshots of Licensee's filing history with the OJR, which indicated that Licensee created two filings on January 4, 2022; however, those filings were not submitted to OJR and remained in draft status. Two additional filings were created by Licensee and submitted to OJR on January 5, 2022, which accepted the filings later that day. Mr. Wulko could not say whether the January 5, 2022 filings were identical to those created the previous day. Mr. Wulko advised that draft documents that are uploaded to the electronic filing system but remain in draft status are eventually purged from the system. Therefore, Mr. Wulko could not verify whether any documents were uploaded with the filings created by Licensee's counsel on January 4, 2022.

The trial court issued a supplemental 1925(a) opinion October 28, 2022, which concluded that Licensee should be permitted to file its Statement of Errors *nunc pro tunc*. The trial court noted that Licensee's counsel emailed the trial court a copy of its Statement of Errors the evening of January 4, 2022, advising the trial court that he had difficulty electronically filing the document, and that Licensee's counsel successfully filed the Statement of Errors the next morning on January 5, 2022. Based on Mr. Wulko's testimony, the trial court agreed that an administrative

8

breakdown prevented Licensee from filing its Statement of Errors on January 4, 2022. Although the trial court acknowledged it was not advisable to wait until after the close of business to file the Statement of Errors, Licensee's counsel acted diligently by advising the trial court of the technical issues encountered during the filing process and, ultimately, filing the Statement of Errors on January 5, 2022.

## II. Issues

On appeal, Licensee argues that this Court should deny the PLCB's Motion to Quash because the trial court accepted Licensee's Statement of Errors as timely filed *nunc pro tunc*. Additionally, Licensee argues that the trial court's findings are not supported by substantial evidence.

## III.   Discussion

At the outset, we must address the PLCB's Motion to Quash and whether the trial court erred in permitting Licensee to file its Statement of Errors *nunc pro tunc*.[5] In arguing that the trial court correctly accepted Licensee's Statement of Errors *nunc pro tunc*, Licensee relies on the testimony presented at the September 28, 2022 and October 12, 2022 hearings before the trial court. Licensee does not otherwise analyze the requirements for a grant of *nunc pro tunc* relief.

The standard for *nunc pro tunc* relief when filing a late Rule 1925(b) statement is identical to that which is applied to an untimely appeal.[6] A party must strictly adhere to the statutory provisions for filing an appeal, and the time for taking an

---

[5] Where the trial court permits an untimely filing *nunc pro tunc*, our review is limited to determining whether the trial court abused its discretion or committed an error of law. *Puckett v. Dep't of Transp., Bureau of Driver Licensing*, 804 A.2d 140, 143 n.6 (Pa. Cmwlth. 2002).

[6] A note to Rule 1925(b)(2) pertinently provides that *nunc pro tunc* relief is generally allowed only when there has been a breakdown in the process that constitutes extraordinary circumstances. *See, e.g.*, *In re Canvass of Absentee Ballots of Nov. 4, 2003 Gen. Election*, 843 A.2d 1223, 1234 (Pa. 2004) (a fraudulent, wrongful, or negligent act by a court official may justify the filing of an appeal *nunc pro tunc*).

9

appeal will not be extended as a matter of grace or mere indulgence. *Criss*, 781 at 1159. A *nunc pro tunc* appeal acts as an exception to this general rule, vindicating the right to appeal that was lost due to extraordinary circumstances. *Union Elec. Corp. v. Bd. of Prop. Assessment, Appeals & Rev. of Allegheny Cnty.*, 746 A.2d 581, 584 (Pa. 2000). An appeal *nunc pro tunc* may be granted upon a showing that extraordinary circumstances prevented a party from filing a timely appeal. *In re Borough of Riegelsville from Bucks Cnty. Bd. of Assessment & Revision of Taxes*, 979 A.2d 399, 402-03 (Pa. Cmwlth. 2009) (internal citations omitted). The procedural circumstances of the appeal must be extraordinary, not the merits or perceived importance of the underlying issues. *Bethke v. City of Phila.*, 282 A.3d 884, 890 (Pa. Cmwlth. 2022). Generally, an appeal *nunc pro tunc* is only granted in civil cases where fraud or a breakdown in the court's operations occurred. *Com. v. Stock*, 679 A.2d 760, 763 (Pa. 1996).

*Nunc pro tunc* relief is also appropriate where an appeal is untimely due to non-negligent circumstances, as they relate to the appellant or the appellant's counsel, where the appellant's notice of appeal was filed shortly after the expiration date, and where the appellee is not prejudiced by the delay. *Criss*, 781 A.2d at 1159. A *nunc pro tunc* appeal in non-negligent circumstances only applies "in unique and compelling cases" in which the appellant establishes that it attempted to file an appeal but was precluded from doing so by "unforeseeable and unavoidable events[.]" *Id.* at 1160. Furthermore, the appellant must demonstrate that the delay in filing is not attributable to the appellant's negligence. *Cook v. Unemployment Comp. Bd. of Rev.*, 671 A.2d 1130 (Pa. 1996). The party seeking relief bears the burden of demonstrating that it meets the requirements for *nunc pro tunc* relief. *Criss*, 781 A.2d at 1159.

10

Instantly, the trial court entered an order on December 14, 2021, directing that Licensee file its Statement of Errors within 21 days. The order further provided that "[a]ny issues not properly included in the [Statement of Errors] timely filed and served . . . shall be deemed waived." O.R., Item No. 19. There is no dispute that Licensee filed its Statement of Errors on January 5, 2022, or 22 days after the trial court issued its order.

The trial court recognized in its supplemental 1925(a) opinion that the OJR's electronic filing system was "fully functional" on January 4, 2022, but it credited the explanation of Licensee's counsel that he attempted to file the Statement of Errors but was unable to do so. R.R. at 379a. Thereafter, Licensee's counsel acted diligently to advise the trial court of the technical problem he encountered, and he successfully filed the Statement of Errors the following day. Although the trial court accepted that this technical problem did not originate with the OJR, the trial court nevertheless concluded that a "breakdown" prevented Licensee's counsel from filing its Statement of Errors on January 4, 2022. *Id.*

We disagree with the trial court that these circumstances warrant *nunc pro tunc* relief. While the record demonstrates that Licensee's counsel apprised the trial court on the evening of January 4, 2022, that he was unable to file the Statement of Errors, and that he forwarded the trial court a copy of that document, there is no evidence to suggest that an administrative breakdown in the trial court or the OJR's electronic filing system precluded Licensee's counsel from timely filing the Statement of Errors. Moreover, Licensee's counsel did not attempt to file the Statement of Errors until after the close of business on January 4, 2022. The potential for technical issues arising at a time when assistance from the OJR's IT department would be unavailable is neither unforeseeable nor unavoidable.

Even if this Court accepted the trial court's conclusion that Licensee was entitled to file its Statement of Errors *nunc pro tunc*, Licensee's appeal of the VIP adjudication would fail.

In that regard, Licensee argues that substantial evidence does not support the trial court's decision affirming the ALJ's adjudication, as the BLCE's evidence consisted solely of Officer Cooke's uncorroborated testimony. Licensee suggests that the trial court should have favored the testimony of Licensee's employee, Mr. Gillespie, over that of Officer Cooke, given Mr. Gillespie's greater experience identifying intoxicated persons. Licensee also argues that the trial court made an impermissible inference that Officer Bernesky supported Officer Cooke's decision to issue a citation for the VIP violation.

In a *de novo* hearing, the trial court may consider both the record submitted by the PLCB and any additional evidence received at the *de novo* hearing before making its findings of fact and conclusions of law. *Pa. State Police, Bureau of Liquor Enf't v. Kelly's Bar, Inc.*, 639 A.2d 440, 442 (Pa. 1994). The trial court, as the ultimate finder of fact, is empowered to determine the weight and credibility of the evidence, to resolve conflicts in the evidence, and is free to reject even uncontroverted evidence. *Hotel Liquor License # H-2892 v. Tabs Ent., Inc.*, 125 A.3d 487, 490 (Pa. Cmwlth. 2015). It is also within the trial court's exclusive province to draw reasonable inferences from the evidence. *Earl Twp. v. Reading Broadcasting, Inc.*, 770 A.2d 794, 798 (Pa. Cmwlth. 2001). Our review in a Liquor Code enforcement appeal is limited to determining whether the trial court committed an error of law or an abuse of discretion. *Pa. State Police, Bureau of Liquor Control Enf't v. Big D. Rests., LLC*, 149 A.3d 890, 896 n.9 (Pa. Cmwlth. 2016). In reviewing evidentiary issues, this Court must determine whether substantial evidence supports

12

the factual findings of the trial court. *Pa. State Police, Bureau of Liquor Control Enf't v. Goodfellas, Inc.*, 850 A.2d 868, 872-73 (Pa. Cmwlth. 2004).

Licensee is correct that, during the October 26, 2021 *de novo* hearing, the trial court stated it would draw a "reasonable inference" that Officer Cooke would not have taken the actions she did without agreement from her field training officer, Officer Bernesky, whom the trial court felt would have otherwise "stepped in and taken some kind of action." R.R. at 258a-59a. This inference is supported, however, by Officer Cooke's acknowledgment that her decision to cite Licensee for the VIP violation was made in consultation with Officer Bernesky. It is also noteworthy that Officer Bernesky was available to testify at the trial court's October 26, 2021 hearing. Although the trial court stressed Officer Bernesky's availability at the time it drew the reasonable inference that Officer Bernesky agreed with Officer Cooke's actions, Licensee's counsel indicated he had "no interest in questioning" Officer Bernesky, who was then excused from testifying. *Id.* at 259a.

Ultimately, Licensee is requesting that this Court reweigh the evidence and substitute our credibility findings for that of the trial court. That is not our role; rather we are to determine whether the trial court's findings have the requisite measure of support in the record. The trial court fully articulated its reasons for crediting Officer Cooke's testimony, despite her lack of experience working for the BLCE. Officer Cooke observed Sean, the VIP, for an hour, during which he had difficulty standing and walking, and spoke with slurred speech. Officer Cooke testified that Sean staggered outside the bar, where he smoked a cigarette. Upon reentering the bar, Sean nearly missed the barstool when he sat down. Thereafter, Mr. Cosme served Sean a vodka with Red Bull. It is noteworthy that Mr. Gillespie testified he was seated at the bar throughout this period, during which Mr. Cosme

13

admitted to consuming a shot with Sean. Although Officer Cooke testified that she saw Mr. Cosme drinking, Mr. Gillespie did not.

Having reviewed the record, we conclude that substantial evidence supports the trial court's November 9, 2021 order, which denied Licensee's appeal of the VIP adjudication, in part, and granted the appeal to the extent the fine was reduced to $50.00.

## IV.   Conclusion

Although substantial evidence supports the trial court's order, Licensee's Statement of Errors was untimely. As Licensee has not demonstrated that it is entitled to *nunc pro tunc* relief, we grant the BLCE's Motion to Quash Licensee's appeal.

_____
ELLEN CEISLER, Judge

14

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Wood Brothers Bar, Inc.,         :
               Appellant    :
                              :
        v.             :  Nos. 1406 and 1407 C.D. 2021
                              :
Pennsylvania State Police Bureau  :
of Liquor Control Enforcement   :

# **O R D E R**

AND NOW, this 4th day of April, 2024, the Pennsylvania State Police Bureau of Liquor Control Enforcement's Motion to Quash the appeal of Wood Brothers Bar, Inc. is hereby GRANTED.  The appeal is QUASHED.

ELLEN CEISLER, Judge