# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Verizon Pennsylvania LLC and    :
Verizon North LLC,    :
           Petitioners    :
    :
    v.    :
    :
Prevailing Wage Appeals Board,    :    No. 1379 C.D. 2025
           Respondent    :
    :
Broadband Communications    :
Association of Pennsylvania,    :
           Petitioner    :
    :
    v.    :
    :
Prevailing Wage Appeals Board,    :    No. 1388 C.D. 2025
           Respondent    :    Argued: February 4, 2026

BEFORE:    HONORABLE RENÉE COHN JUBELIRER, President Judge
           HONORABLE PATRICIA A. McCULLOUGH, Judge
           HONORABLE ANNE E. COVEY, Judge
           HONORABLE CHRISTINE FIZZANO CANNON, Judge
           HONORABLE STACY WALLACE, Judge
           HONORABLE MATTHEW S. WOLF, Judge
           HONORABLE STELLA M. TSAI, Judge

OPINION BY
JUDGE COVEY           FILED: March 6, 2026

        Verizon Pennsylvania LLC and Verizon North LLC (collectively, Verizon) and Broadband Communications Association of Pennsylvania (Broadband) (collectively, Petitioners) petition this Court for review of the Prevailing Wage Appeals Board's (Board) September 22, 2025 order denying Verizon's grievance (Grievance). There are five issues before this Court: (1) whether the Board erred as a matter of law by determining that the Secretary of Labor

and Industry (Secretary) *duly authorized* the Bureau of Labor Law Compliance (Bureau) to act as her deputy or representative to discharge her duty imposed by the General Assembly at Section 7 of the Pennsylvania Prevailing Wage Act (Act);[1] (2) whether the Board erred as a matter of law by determining that the Secretary may act unilaterally, without consulting the Prevailing Wage Advisory Board (Advisory Board); (3) whether the Board erred as a matter of law by determining that the Secretary did not abuse her discretion when she set the electric lineman rate as prevailing for deployment and splicing of low-voltage fiber optic cable, rather than promulgating teledata linemen and other teledata worker wage rates; (4) whether the Board erred as a matter of law by refusing to consider prior determinations of the Secretary and the Board; and (5) whether the Board made material findings of fact based on substantial record evidence.[2]  After review, this Court affirms.

In 2023, the Pennsylvania Department of Community and Economic Development's (DCED) Broadband Development Authority (Authority)[3] advertised the Pennsylvania Broadband Infrastructure Program (BIP).  BIP's intent was to build out broadband fiber optic networks to unserved and underserved areas of the Commonwealth of Pennsylvania (Commonwealth).  The projects were funded in part by federal money received through the COVID-19 American Rescue Plan Act

---

[1] Act of August 15, 1961, P.L. 987, *as amended*, 43 P.S. § 165-7 (relating to the duty of the Secretary).

[2] In its Statement of Questions Involved, Verizon included an additional issue of whether the Board erred as a matter of law by determining that Verizon "failed to carry [its] burden of proof" demonstrating that the Secretary exercised discretion she did not possess and/or abused any discretion she may have had.  Verizon Br. at 34; *see also id*. at 49.  Because that issue is subsumed in the other issues, this Court addresses it accordingly herein.

[3] The Commonwealth of Pennsylvania (Commonwealth) created the Authority as an independent authority under DCED to engage statewide broadband expansion plans and distribute federal and state funds to support broadband expansion projects in unserved and underserved areas of the Commonwealth.  *See* Sections 6111 and 6122 of the Public Authorities and Quasi-Public Corporations Act, 64 Pa.C.S. §§ 6111, 6122.

of 2021 (ARPA)[4] grant to the Commonwealth and required at least a 25% contribution from the awardees. Although federal funds used for public projects typically require a prevailing minimum wage to be set consistent with the federal Davis Bacon Act,[5] the ARPA program excluded the broadband program from federal prevailing wage requirements, allowing state law to control the issue. However, the guidance prepared for the BIP reflects that prevailing wage *may* apply. Since then, the Commonwealth has determined that prevailing wage *will* apply to the BIP.

On April 18, 2024, the Authority awarded BIP work related to 53 broadband projects to entities in 42 counties across the Commonwealth, including to Petitioners. The Authority did not seek prevailing wage determinations related to the broadband expansion work on that date. Instead, on April 24, 2024, for projects the Authority awarded to Verizon, the Bureau issued Wage Determination 24-04164 for Warren County. On May 15, 2024, the Bureau issued Wage Determinations 24-04911 through 24-04923 for Clearfield, Jefferson, Pike, Centre, and Somerset Counties. On June 7, 2024, the Bureau issued Wage Determination 24-05667 related to Carbon County. In each Determination, the Bureau found that the appropriate prevailing wage for the BIP projects was for an electric lineman. The Bureau also issued prevailing wage determinations based on the electric lineman rate for projects awarded to members of Broadband and Connect Holding II, LLC d/b/a Brightspeed (Brightspeed).

Petitioners provided additional information to the Secretary and the Bureau to seek a change in the prevailing wage determination to include a prevailing wage for teledata linemen and other teledata workers. The Bureau refused to include a prevailing wage for teledata linemen and other teledata workers. On May 22, 2024,

---

[4] 15 U.S.C. §§ 9001-9013.
[5] 40 U.S.C. § 3142.

3

Verizon filed the Grievance with the Board in response to the Secretary's failure to recognize the prevailing wage for teledata linemen and other teledata workers. On July 1, 2024, Broadband filed a petition to intervene in the Grievance in support of Verizon, which the Board granted on July 16, 2024. Communications Workers of America (CWA) and Brightspeed also filed petitions to intervene in the Grievance in support of Verizon, which the Board granted on July 16, 2024. The International Brotherhood of Electrical Workers (IBEW) filed a petition to intervene against the Grievance in support of the Bureau, which the Board granted on June 20, 2024. On September 22, 2025, the Board denied the Grievance. Petitioners appealed to this Court.[6, 7]

> Initially,
>
> [t]he statutory language of the [] Act is the starting point.
>
> When examining statutory language, [this Court] follow[s] the rules of statutory construction in the Statutory Construction Act of 1972 (Statutory Construction Act), 1 Pa.C.S. § 1501-1991. As our Supreme Court has recently explained:

---

[6] By November 13, 2025 Order, this Court consolidated Petitioners' appeals.

[7] This Court's review of an administrative agency's order determines whether findings of fact are supported by substantial evidence, whether constitutional rights have been violated, and whether the determination is in accordance with law. *Bologna v. Dep*[*'t*] *of Lab*[.] [*&*] *Indus*[.], 816 A.2d 407, 410 n.3 (Pa. Cmwlth. 2003). [This Court's] review of questions of law is plenary. *Tomaskevitch v. Specialty Rec*[*s.*] *Corp*[.], 717 A.2d 30, 32 (Pa. Cmwlth. 1998). Th[is] Court will not overturn an exercise of administrative discretion unless the agency has abused its discretion or acted in an arbitrary or capricious manner. *Int*[*'l*] [*Bhd.*] *of Elec*[.] *Workers v. Dep*[*'t*] *of Lab*[.] [*&*] *Indus*[.], *Prevailing Wage Appeals* [*Bd.*], 816 A.2d 1220, 1223 (Pa. Cmwlth. 2003).

*PSP NE, LLC v. Pa. Prevailing Wage Appeals Bd.*, 292 A.3d 1175, 1178 n.2 (Pa. Cmwlth. 2023).

4

[Section 1921(a) of] [t]he Statutory Construction Act provides that the object of all statutory interpretation "is to ascertain and effectuate the intention of the General Assembly." 1 Pa. C.S. § 1921(a). Generally, **the plain language of the statute provides the best indication of legislative intent**." *Miller v. [Cnty.] of [Ctr.]*, . . . 173 A.3d 1162, 1168 ([Pa.] 2017). **If the statutory language is clear and unambiguous** in setting forth the intent of the General Assembly, **then** "[**this Court**] **cannot disregard the letter of the statute under the pretext of pursuing its spirit**." *Fletcher v. [Pa. Prop. & Cas. Ins. Guar. Ass'n]*, . . . 985 A.2d 678, 684 ([Pa.] 2009) (citing 1 Pa.C.S. § 1921(b)). In this vein, "[this Court] should not insert words into [a statute] that are plainly not there." *Frazier v. Workers' [Comp.] Appeal [Bd.] (Bayada Nurses, Inc.)*, . . . 52 A.3d 241, 245 ([Pa.] 2012).

. . . .

Section 1921(b) of the Statutory Construction Act, which provides that "**when the words of a statute are clear and free from all ambiguity**, **the letter of it is not to be disregarded under the pretext of pursuing its spirit**," is crucial to our analysis here. **If the statute** or rule . . . are **not ambiguous**, then [**this Court**] **cannot apply the presumptions set forth in Section 1922 of the Statutory Construction Act**. "A statute is ambiguous when there are at least two reasonable interpretations of the text under review." *Warrantech Consumer [Prods. Servs.], Inc. v. Reliance [Ins.] Co. in Liquidation*, . . . 96 A.3d 346, 354-55 (2014). "[The Pennsylvania Supreme] Court has consistently held that . . . **interpretive rules of statutory construction are to be utilized only where the statute** [or rule] at issue **is ambiguous**." [*Pa. Sch. Bds. Ass'n, Inc. v. Pub. Sch. Emps. Ret. Bd.*], 863 A.2d [432,] 436 [(Pa. 2004)].

*Commonwealth v. Green*, . . . 291 A.3d 317, 327-28 ([Pa.] 2023).

5

*Hommrich v. Pub. Util. Comm'n*, 344 A.3d 121, 131 (Pa. Cmwlth. 2025) (emphasis added).

Verizon first argues that the Board erred as a matter of law by determining that the Bureau was duly authorized to discharge the duties imposed by the General Assembly upon the Secretary. Specifically, Verizon contends that the record below is devoid of any evidence that the Secretary ever *duly authorized* the Bureau to step into her shoes and discharge the duty the legislature imposed on her through Section 7 of the Act. Verizon asserts that the General Assembly imposed the duty on the Secretary, who Section 2(6) of the Act defines as "the Secretary . . . or [her] duly authorized deputy or representative." 43 P.S. § 165-2(6).

Broadband similarly argues that there is no evidence that the Bureau is the Secretary's duly authorized representative to administer and enforce the Act. Broadband contends that the record evidence is clear, and it is uncontested that the Secretary did not participate in the prevailing wage determination at issue; instead, from the inception of this matter, the Bureau referred to itself as the Secretary's designee for making such determinations. Broadband further asserts that there is no dispute that the Secretary may select a duly authorized representative to make prevailing wage decisions under the Act; however, the Act does not authorize the Bureau to be the Secretary's *designee*. Broadband claims that in order to lawfully appoint the Bureau as her designee, there must be an express authorization of such appointment; merely creating a bureau, without more, does not result in a *duly authorized representative* or even a delegation of authority.

The Bureau rejoins that the General Assembly authorizes the Secretary to administer and enforce the Act, and the Act defines "Secretary" as "the Secretary . . . or [her] duly authorized deputy or representative." 43 P.S. § 165-2(6). The Bureau retorts that consistent with that definition and the Secretary's authority to create bureaus "as may be required for the proper conduct of the work of [the

6

Department of Labor and Industry (Department)]," 71 P.S. § 72, the Secretary created a division to assist her in the administration of the Act shortly after the Act was created. The Bureau asserts that the Department's Regulations also established that the Secretary's chosen division administered the Act. *See* Section 211.1 of the Department's Regulations, 34 Pa. Code § 211.1. The Bureau proclaims that, over time, the Secretary renamed the division as the Bureau of Labor Law Compliance. The Bureau maintains that the Secretary created the Bureau as an entity within the Department to handle certain administrative and enforcement duties related to the Act on her behalf and as such, over decades, the Bureau has acted as the Secretary's agent for purposes of Act administration, from investigations to enforcement actions and, as here, to prevailing wage determinations.

Section 7 of the Act provides, in relevant part: "**The [S]ecretary shall**, after consultation with the [A]dvisory [B]oard, **determine the general prevailing minimum wage rate** in the locality in which the public work is to be performed for each craft or classification of all workmen needed to perform public work contracts during the anticipated term thereof[.]" 43 P.S. § 165-7 (emphasis added). Section 2(6) of the Act defines *Secretary* as: "[T]he Secretary of Labor and Industry **or h[er] duly authorized deputy or representative**." 43 P.S. § 165-2(6) (emphasis added). Petitioners assert that the Secretary did not *duly authorize* the Board as her representative. However, Section 211.1 of the Department's Regulations mandates that the General Rules of Administrative Practice and Procedure apply to the Department's Prevailing Wage Division, *see* 34 Pa. Code § 211.1, and Section 212 of the Administrative Code of 1929[8] instructs:

> **The heads of the several administrative departments**, except the Auditor General and the State Treasurer and the several independent administrative boards and

---

[8] Act of April 9, 1929, P.L. 177, *as amended*, 71 P.S. §§ 51-732.

> commissions **shall**, subject to the approval of the [e]xecutive [b]oard, **establish such bureaus** or divisions in their respective departments, boards, or commissions, **as may be required for the proper conduct of the work of such departments**, boards[,] or commissions.

71 P.S. § 72 (emphasis added). Thus, because the Secretary was authorized to establish the Bureau to conduct the Department's work, and it established the Bureau to do so, the Bureau is the Secretary's duly authorized representative. Accordingly, the Board properly determined that the Secretary duly authorized the Bureau to act as her representative to discharge her duty imposed by the General Assembly at Section 7 of the Act.

Verizon next contends that the record below demonstrates that the Bureau, for years, has excluded the Advisory Board from prevailing wage determinations, which breaches Section 7 of the Act, i.e., the duty imposed on the Secretary. Verizon contends that this was the Commonwealth's first large-scale public broadband infrastructure project and consulting with the Advisory Board would have led to a more reasoned determination from the Secretary because the Advisory Board must include industry insiders (contractors and labor unions). *See* Section 2.1(c) of the Act, 43 P.S. § 165-2.1(c);[9] *see also* 43 P.S. § 165-7.

Broadband likewise argues that Section 7 of the Act mandates that the Secretary must consult with the Advisory Board. Broadband further contends that Section 2.1(e)(2) of the Act indicates that the Advisory Board shall have the power to "advise and assist the [S]ecretary in carrying out the duties provided for h[er] by [S]ection 7 of the [Act]." 43 P.S. § 165-2.1(e)(2). Broadband asserts that such language denotes that the Act requires the Advisory Board to advise and assist the Secretary; it is not optional or at the Secretary's discretion.

---

[9] Section 2.1 of the Act was added by Section 3 of the Act of August 9, 1963, P.L. 653.

The Bureau rejoins that Petitioners' argument that the Secretary is required to consult with the Advisory Board on each of the more than 11,000 prevailing wage determination requests she receives each year is not in accordance with the Act's text and would lead to the absurd result of halting public work construction in the Commonwealth. The Bureau further retorts that, in 1963, the General Assembly amended the Act to create the Advisory Board to assist the Secretary in administering the Act. *See* 43 P.S. § 165-2.1. The Bureau asserts, to that end, the Advisory Board has the power and duty to: (1) consult with the Secretary at her request concerning any matter arising under administration of the Act; (2) advise and assist the Secretary in carrying out her duties in Section 7 of the Act; and (3) promulgate rules and regulations necessary to carry out the duties the Act placed upon the Board. *See* 43 P.S. § 165-2.1(e)(1-3). The Bureau proclaims that the most reasonable reading of Section 7 of the Act merely sets out an order of operations for the Secretary if, and when, she chooses to seek out the Advisory Board's advice and assistance. The Bureau submits that, as the plain meaning of Sections 2.1 and 7 of the Act state, the General Assembly did not create the Advisory Board to trump the Secretary, or otherwise assume authority previously provided to the Secretary on questions of the Act's administration; instead, the Advisory Board is what its name suggests - a board that advises the Secretary. The Bureau claims that the Board's advice is not binding, and the discretionary authority of setting prevailing wages and classifications under the Act remains solely within the Secretary's area of responsibility and authority.

The Pennsylvania Supreme Court stated in *Green Analytics North, LLC v. Pennsylvania Department of Health*, 343 A.3d 1086 (Pa. 2025): "When interpreting a statute, [this Court] should not read the provisions in isolation, but instead understand each provision in the context of the statute as a whole." *Id*. at 1094. "Under these circumstances, [this Court] must determine not only what rights,

9

powers, and duties the Act grants or imposes on the [Secretary], but also what rights, powers, and duties the Act grants or imposes on [the Advisory Board]." *Id*. at 1096.

As stated above, Section 7 of the Act provides, in relevant part: "**The [S]ecretary shall,** *after consultation with the* [*A*]*dvisory* [*B*]*oard,* **determine the general prevailing minimum wage rate** in the locality in which the public work is to be performed for each craft or classification of all workmen needed to perform public work contracts during the anticipated term thereof[.]" 43 P.S. § 165-7 (bold and italic emphasis added). However, Section 2.1(e) of the Act describes:

> The Advisory Board shall have the power and duty to--
>
> (1) **Consult with the** [**S**]**ecretary** *at h*[*er*] *request* concerning any matter arising under the administration of th[e] [A]ct.
>
> (2) *Advise and assist* **the** [**S**]**ecretary in carrying out the duties provided** for h[er] by [S]ection 7 of th[e] [A]ct.
>
> (3) Promulgate rules and regulations necessary to carry out the duties placed upon the [B]oard by th[e] [A]ct.

43 P.S. § 165-2.1(e) (bold and italic emphasis added).

Taken as a whole, "the plain language of the [above provisions] provides the best indication of legislative intent[,]" and the plain language makes clear that it is within the Secretary's discretion whether to consult with the Advisory Board. *Hommrich*, 344 A.3d at 131 (quoting *Green*, 291 A.3d at 327). This Court agrees with the Bureau that Section 7 of the Act merely sets out an order of operations for the Secretary *if, and when, she chooses to seek out the Advisory Board's advice and assistance*.[10] Accordingly, the Board properly determined that the Secretary was not required to consult with the Advisory Board.

---

[10] "[B]ecause [Petitioners] reached a different conclusion does not automatically mean that Section [702 of the Act] is subject to more than one *reasonable* interpretation and, therefore, is ambiguous. For all the reasons stated herein, [Petitioners'] interpretation . . . of Section [702 of the Act] is not reasonable." *Commonwealth v. Lehman*, 311 A.3d 1034, 1048 n.20 (Pa. 2024).

Verizon next asserts that the Bureau never investigated nor determined whether work covered by the IBEW commercial construction agreements, on which the Bureau relied when setting prevailing wages for broadband expansion, had ever been performed in the localities where the broadband expansion would occur. Verizon contends that the Secretary and the Bureau simply deferred to electric lineman rates found in IBEW's and CWA's commercial agreements, claiming below that those agreements were the most relevant collective bargaining agreements (CBA) used to decide prevailing wages. Verizon claims that is not the process the legislature mandated and, thus, was an abuse of discretion.

Broadband also argues that the Secretary's determination that the electric lineman rate was the prevailing wage for workers who deploy and splice low-voltage fiber optic or coaxial cable along telecommunications networks was an abuse of discretion. Broadband contends that neither the Secretary nor the Bureau relied on any rational basis for its decision related to the BIP projects; to the contrary, the basis for the prevailing wage determinations for the BIP projects included an irrelevant electric lineman note for unrelated projects, unrelated CBAs, and a complete ignorance of broadband buildout projects. Broadband further asserts that neither the Secretary nor the Bureau conducted a continuing program for obtaining and compiling wage rate information reflecting wage rates paid to workmen in the various types of construction in the locality. *See* Section 9.105(d) of the Department's Regulations, 34 Pa. Code § 9.105(d). In addition, Broadband submits that the Secretary did not determine prevailing wages for varying project types within the entire range of work performed by the building and construction industry, nor did the information submitted reflect the specified wage rate or rates paid to a particular craft in the locality or the type or types of construction on which the wage rate or rates have been paid. *See id*.

11

IBEW rejoins that in determining the prevailing wage in a particular craft or classification, the Secretary may only consider rates existing in the building and construction industry. *See* 34 Pa. Code § 9.105(d). IBEW retorts that, based on the record, Verizon, which does not contract with any company to work on its own system, is not primarily (or even substantially) engaged in the building and construction industry; rather, Verizon's business is primarily directed towards customer service and the maintenance of its existing system, including connecting and disconnecting service to its millions of users. IBEW submits that Verizon's main witness, Senior Director of Labor Relations Craig Brewster, agreed that Verizon's primary business purpose is to offer telecommunications services to customers. IBEW also counters that, given that Verizon is not even a construction employer under the Department's Regulations relating to the establishment of prevailing wage classifications, *see* 34 Pa. Code § 9.105(d), it was patently reasonable for the Secretary to follow the Department's Regulations and refuse to promulgate classifications or prevailing wages based on Verizon's workforce.

The Bureau rejoins that the Secretary acted within her lawful discretion under the Act when, after fully considering all relevant information, she denied a request to create new prevailing wage job classifications. The Bureau further retorts that in assessing the record supporting the Secretary's decision, Petitioners cannot demonstrate that the Secretary's denial of Verizon's request was arbitrary and capricious or was unsupportable on any rational basis because there was no evidence upon which the action may be logically based. The Bureau asserts that the Secretary followed the Act's letter and spirit, including using the discretionary decision-making authority the General Assembly granted her, when considering Verizon's request, i.e., after Verizon submitted its requests for new telecommunication-specific classifications, along with supporting information, the Secretary weighed that evidence, as well as evidence that supported the Department's longstanding

12

position. The Bureau maintains that, in addition to Verizon's multiple submissions over many months, the evidence the Secretary considered included the Department's historical practices and classification decisions of other states, as well as the possibility for adverse consequences, including the downstream effect of previously unrecognized job classifications increasing the likelihood of worker misclassification and underpayment. The Bureau insists that the Secretary's denial of Verizon's request was within the bounds of her lawfully authorized discretion and was rationally based.

Initially, "[t]he determination of prevailing wages is an act largely committed to the Secretary's legislative authorized discretion. The Secretary's exercise of discretion is not subject to reversal, absent proof of fraud, bad faith[,] or a blatant abuse of discretion." *Int'l Bhd. of Elec. Workers v. Dep't of Lab. & Indus., Prevailing Wage Appeals Bd.*, 816 A.2d 1220, 1223 (Pa. Cmwlth. 2003) (citation omitted). "Th[is] Court will not overturn an exercise of administrative discretion unless the agency has abused its discretion or acted in an arbitrary or capricious manner." *PSP NE, LLC v. Pa. Prevailing Wage Appeals Bd.*, 292 A.3d 1175, 1178 n.2 (Pa. Cmwlth. 2023).

Section 9.105(d) of the Department's Regulations provides:

The Secretary will conduct a continuing program for obtaining and compiling of wage rate information and shall encourage the voluntary submission of wage rate data by contractors, contractors' associations, labor organizations, public officials[,] and other interested parties, reflecting wage rates paid to workmen in the various types of construction in the locality. **Rates shall be determined for varying types of projects within the entire range of work performed by the building and construction industry**. Information submitted shall reflect not only the specified wage rate or rates paid to a particular craft in the locality but also the type or types of construction on which the wage rate or rates have been paid. If the Secretary deems that the data at hand is

13

insufficient to make a determination with respect to the crafts or classifications necessary to perform the proposed public work, [s]he may have a field survey conducted by h[er] staff representative for the purpose of obtaining additional information upon which to make a determination of the wage rates, and also the customs, usages and practices as to the type of work to which the wage rates apply and the size of available force of qualified workmen within the locality in which the public work is to be performed.

34 Pa. Code § 9.105(d) (emphasis added).

According to the Bureau's website:[11]

The Bureau . . . updated its Pennsylvania Building Journeyperson Laborer Notes to clarify existing tasks performed throughout the Commonwealth. The "Building Laborer Notes" link on the Bureau's website provides a list of those tasks that should be read in conformity with custom and usage of the construction industry in the geographic region in which they are utilized.

https://www.pa.gov/agencies/dli/resources/compliance-laws-and-regulations/labor-management-relations/labor-law/prevailing-wage (last visited March 5, 2026).

The Bureau updated "Notes for Electric Lineman" on September 19, 2018, and described it as including:

Assembling, installation, erection, operation, maintenance, repair, control, inspections of all apparatus devices, wires, cables, supports, insulators, conductors, ducts, raceways, conduits including temporary, permanent, maintaining or restoring electrical service when part of outdoor lighting and wiring when fed from the street and controlled from the street.

All work consisting of wood poles, concrete or metal (or substitutes therefor[]) poles or towers, including wires,

---

[11] "This Court may take judicial notice of public information on an official government website." *Cunningham v. Unemployment Comp. Bd. of Rev.*, 330 A.3d 20, 23 n.1 (Pa. Cmwlth. 2025).

14

cables or other apparatus supported therefrom. Installing and maintaining the catenary and trolley work on railroad property and bonding of rails.

All outdoor substations, electrical connections and grounding including the setting of transformers and connecting the buses thereto, windmills and solar installations.

Installation and maintenance of roadway lighting and traffic signals systems electronic signs, and intelligent transportation systems.

https://www.pa.gov/content/dam/copapwp-

pagov/en/dli/documents/individuals/labor-management-relations/llc/prevailing-

wage/documents/notes-for-electric-linemen.pdf (last visited March 5, 2026).

Here, the Board explained:

The Bureau's determination of "Electric Lineman" as the proper classification for this work predates the filing of this [G]rievance. Traditionally, the Bureau issued wage determinations on broadband public work projects with the understanding that the "Electric Linem[a]n" classification would cover the installation of telecommunication cables. The Bureau used wage rates from IBEW Local 1319's CBA and IBEW Local 126's CBA, depending on the location of the project, for the "Electric Lineman" classification.

Several years ago, the Bureau started receiving complaints that some contractors were paying the lower-paying [l]aborer classification for completion of some tasks. The Secretary, her deputies, and the Bureau met with several interested parties on the issue of proper classification of this work. In 2018, the Bureau developed a note to clarify any misunderstandings of its position that the installation of cable was considered the work of the "Electric Lineman" classification, which was made publicly available on the Bureau's website. The Bureau did not receive any grievances on this issue before the current one.

With the anticipation of federal funding for broadband expansion, the Bureau conducted outreach to interested parties and answered "hundreds" of questions concerning broadband expansion projects. Representatives from [Broadband] discussed the BIP and [broadband expansion

access development] funding concerning prevailing wage requirements with the Secretary, her deputies, and the Bureau. In July 2023, Todd Eachus [(Mr. Eachus)], President of [Broadband], sent a letter to the Secretary requesting the creation of three new classifications for telecommunications work. He included several attachments, such as wage rate determinations from outside of Pennsylvania and excerpts from other IBEW locals. The Secretary and [the] Bureau reviewed these materials and responded in August 2023, but declined to create the requested classifications. Thereafter, Mr. Eachus continued his discussions with Executive Deputy Secretary William Trusky about the new[ly] requested classifications.

Bd. Op. at 24-26 (internal record citations omitted).

According to the Board:

On or about April 1, 2024, CWA Vice-President Michael Davis sent the Bureau a letter requesting three new telecommunications specific classifications. . . . The Bureau deliberated the new information internally, but still declined to create the requested new classifications.

In April 2024, [Verizon] filed rate requests with the Bureau for 15 projects. In the application for wage rates, [Verizon] requested that the Bureau create new telecommunication classifications for the projects. The Bureau again refused to create the new requested classifications because it "had enough information based off of already established note [sic] for the classification of work."

In November 2024, [Verizon] submitted 16 additional rate requests with the Bureau, again reiterating their request for new classifications. . . . The Bureau issued the wage rates without the requested classifications. The Bureau later reviewed the submitted information internally, but again decided not to add the requested classifications.

Bd. Op. at 26-27 (internal record citations omitted).

The Board concluded:

The record is clear that [Verizon] and [CWA, Broadband, and Brightspeed (]aligned Intervenors[)] submitted a substantial amount of information to the Secretary and

16

Bureau. It is also clear that after reviewing the materials, the Secretary decided to maintain the status quo and not create new classifications for the work. While there may be disagreement on what **the Secretary** should have decided, there is no doubt that she **considered the submitted information on several occasions and each time chose to continue recognizing that the proper classification for this work is the "Electric Lineman," based on her understanding of the custom and usage of the industry in the localities of the [p]rojects**. Accordingly, the Secretary's decision was based on a rational reason and was not arbitrary or capricious.

Bd. Op. at 27 (emphasis added). Likewise, this Court cannot hold that the Secretary "abused [her] discretion or acted in an arbitrary or capricious manner." *PSP NE, LLC*, 292 A.3d at 1178 n.2. Accordingly, the Board properly determined that the Secretary did not abuse her discretion.

Verizon next maintains that the Board refused a request from Verizon to supplement the record to include or take official notice of certain prior Board decisions. Verizon asserts that, on August 1, 2025, Intervenors Broadband and Brightspeed joined it in requesting that the Grievance record include, or the Board take official notice of, the January 17, 2002 Board decision in PWAB-2A-2001 (*Local 98*), which was relevant to the Grievance. Verizon argues that it and aligned Intervenors also requested that the Board include in the record below, or take official notice of, the Final Decision and Order of the Secretary docketed at 00-003, which was also relevant to the Grievance. Verizon contends that in both cases, the Secretary designated the requested classifications. Verizon insists that the Secretary's and the Board's failure to rely on their earlier decisions or even to distinguish them in light of the similar facts and issues in this appeal was an abuse of discretion.

Broadband similarly argues that those previous adjudications and determinations are relevant to the Board's decision-making process. Broadband

17

asserts that the facts underlying this appeal show there are at least four CBAs recognizing a separate class of workmen as teledata workers, including teledata linemen and teledata splicers, and which apply to the localities subject to the awards under the BIP. Broadband insists that the facts of the current case are even stronger than those in the 2002 and 2006 Board decisions referenced above. Broadband emphasizes that there is no record evidence in the current case that electric linemen are experienced in or performing broadband infrastructure buildouts as required for the BIP. Broadband submits that, in the previous determinations, the existence of teledata CBAs and the class of workers performing the work was determinative of the outcome supporting prevailing wages for the teledata class of workers. Broadband proclaims that the record in the current matter shows that there are applicable CBAs for teledata workers doing the same type of work contemplated by BIP projects in the locales of the awarded projects.

The Bureau rejoins that Petitioners incorrectly suggest that the Board's ruling in *Local 98*, and the Department's briefs filed in 2003, require a different result or otherwise require the Board to follow, distinguish, or overrule its own precedent; however, *Local 98* **did not** establish any such apposite precedent or otherwise establish a policy that binds the Secretary and this Court for future classification cases. The Bureau retorts that in *Local 98*, as noted by the Board at the time, the Department had conducted a wage survey in 1996, resulting in a conflict between a local union of electricians and a local IBEW union, and after one of the parties failed to respond to Departmental requests for information, the Secretary utilized her discretion to create a new classification. The Bureau maintains that to hold that the Secretary is bound to add a classification to heavy and highway work, that has been recognized in a completely different setting and involving different types of work and skill, would be to rewrite the Act to require homogenous classification lists for all work categories.

18

While it is within the Board's discretion to permit a party to supplement the record, it does not appear that such a request would be required in order for Petitioners to argue that the prior Board decisions support their positions. Notwithstanding, this Court cannot hold that the Secretary and/or the Board abused their discretion by not addressing those cases. Accordingly, the Board did not err by not addressing the Secretary's and the Board's prior determinations.

Lastly, Verizon argues that in rendering its decision and equipped with a voluminous record that covered nine hearing days and included dozens of documentary exhibits, the Board erred by making no findings of material fact that are central to the dispute. Verizon asserts that the Board only made 52 findings of fact in its decision, the first 46 of which were largely immaterial background facts that the Board cut and pasted from the Joint Stipulation of Undisputed Facts submitted by the parties before the hearing commenced. Verizon contends that the Board's other six factual findings were immaterial to the questions of: (i) whether the Secretary duly authorized the Bureau to discharge her statutory duty; (ii) whether the Secretary may act unilaterally, without consulting the Advisory Board, and contrary to the legislative mandate set forth at Section 7 of the Act; and (iii) whether the Secretary abused her discretion when setting the electric lineman rate as prevailing for deployment and splicing of low-voltage fiber optic cable, without any evidence that such workers have ever performed such work in the relevant localities into which broadband service is being expanded. Verizon insists that the Board ignored substantial evidence that supported Verizon's and aligned Intervenors' positions, including the prior official rulings of the Board and the Secretary.

Concerning the above-stated issues that Verizon contends that the Board failed to make material findings of fact thereon, the first two issues are questions of law involving statutory interpretation and, thus, findings of fact are not required. Relative to the third issue, Verizon did not specifically present it to the

Board and therefore there were no specific findings of fact therefor. However, the Board issued a 30-page opinion addressing the specific issues Verizon did raise before it. Based thereon, this Court cannot hold that the Board *inferred* facts that are unsupported or contradicted by substantial record evidence. Accordingly, the Board did not err by failing to make findings of fact.

      For all of the above reasons, the Board's order is affirmed.


_____
ANNE E. COVEY, Judge

Judge Dumas did not participate in the decision in this matter.

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Verizon Pennsylvania LLC and :
Verizon North LLC, :
               Petitioners :
                :
        v. :
                :
Prevailing Wage Appeals Board, : No. 1379 C.D. 2025
             Respondent :
                :
Broadband Communications :
Association of Pennsylvania, :
             Petitioner :
                :
        v. :
                :
Prevailing Wage Appeals Board, : No. 1388 C.D. 2025
             Respondent :

# O R D E R

AND NOW, this 6th day of March, 2026, the Prevailing Wage Appeals Board's September 22, 2025 order is affirmed.

_____
ANNE E. COVEY, Judge

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

| | | |
|---|---|---|
| Verizon Pennsylvania LLC and<br>Verizon North LLC, | : | |
|            Petitioners | : | |
| | : | |
| v. | : | No. 1379 C.D. 2025 |
| | : | |
| Prevailing Wage Appeals Board, | : | |
|            Respondent | : | |
| | : | |
| Broadband Communications | : | |
| Association of Pennsylvania, | : | |
|            Petitioner | : | |
| | : | |
| v. | : | No. 1388 C.D. 2025 |
| | : | |
| Prevailing Wage Appeals Board, | : | |
|            Respondent | : | Argued: February 4, 2026 |

BEFORE: HONORABLE RENÉE COHN JUBELIRER, President Judge
           HONORABLE PATRICIA A. McCULLOUGH, Judge
           HONORABLE ANNE E. COVEY, Judge
           HONORABLE CHRISTINE FIZZANO CANNON, Judge
           HONORABLE STACY WALLACE, Judge
           HONORABLE MATTHEW S. WOLF, Judge
           HONORABLE STELLA M. TSAI, Judge

CONCURRING AND DISSENTING OPINION BY
JUDGE WOLF                           FILED: March 6, 2026

      I agree with the Majority that the Bureau of Labor Law Compliance (Bureau) is the Secretary of Labor and Industry's (Secretary) duly authorized representative. I part ways with the Majority, however, on the question of whether the Secretary may unilaterally render a prevailing wage determination without first

consulting the Prevailing Wage Advisory Board (Advisory Board).  Because Section 7 of the Pennsylvania Prevailing Wage Act (Act)[1] unambiguously sets forth a procedural two-step that requires the Secretary to consult with the Advisory Board *before* rendering a prevailing wage determination, I respectfully dissent.

The Majority begins with a cogent explanation of principles of statutory construction, highlighting the threshold tenet that the object of all statutory interpretation is to ascertain and effectuate the intention of our General Assembly.  *See* 1 Pa.C.S. § 1921(a); *Green Analytics North, LLC v. Dep't of Health*, 343 A.3d 1086, 1093 (Pa. 2025).  Generally, the plain language of the statute provides the best indication of legislative intent and "[w]hen the words of a statute are clear and free from all ambiguity, the letter of it is not to be disregarded under the pretext of pursuing its spirit." 1 Pa.C.S. § 1921(b);  *Hommrich v. Pub. Util. Comm'n*, 344 A.3d 121, 131 (Pa. Cmwlth. 2025).  If a statute is free and clear from ambiguity, this Court is precluded from applying the presumptions set forth in Section 1922 of the Statutory Construction Act, 1 Pa.C.S. § 1922.  *Hommrich*, 344 A.3d at 131.  Those tools of construction are reserved to resolve ambiguities in the text.  *Id.*  "A statute is ambiguous when there are at least two reasonable interpretations of the text under review." *Id.* (internal citation omitted).  Despite accurately stating these well-settled principles, the Majority goes on to misapply them.

The language at issue appears in Section 7 of the Act, and provides, in relevant part:

> The secretary shall, after consultation with the advisory board, determine the general prevailing minimum wage rate in the locality in which the public work is to be

---

[1] Act of August 15, 1961, P.L. 987, *as amended*, 43 P.S. § 165-7.

> performed for each craft or classification of all workmen needed to perform public work contracts during the anticipated term thereof[.]

43 P.S. § 165-7.  In my view, this language unambiguously sets forth the following two-step process for issuance of a prevailing wage rate determination:  (1) Secretary consults with the Advisory Board; (2) Secretary issues determination.

Without analyzing the specific words of Section 7, the Majority points to Section 2.1(e) of the Act (Advisory Board, powers and duties) and ultimately concludes that Section 7's "after consultation with the advisory board" language is optional.  *Verizon Pennsylvania LLC v. Prevailing Wage Appeals Board* (Pa. Cmwlth., Nos. 1379, 1388 C.D. 2025, filed March 6, 2026) (Majority), slip op. at 10.  Section 2.1(e) states:

> (e) The Advisory Board shall have the power and duty to--
>
> (1) Consult with the secretary at his request concerning any matter arising under the administration of this act.
>
> (2) Advise and assist the secretary in carrying out the duties provided for him by section 7 of this act.
>
> (3) Promulgate rules and regulations necessary to carry out the duties placed upon the board by this act.

43 P.S. § 165-2.1(e).[2]  Based on these two provisions, the Majority summarily holds that "the plain language makes clear that it is within the Secretary's discretion whether to consult with the Advisory Board" and "agrees with the Bureau that Section 7 of the Act merely sets out an order of operations for the Secretary, *if, and*

---

[2] Section 2.1 was added by the Act of August 9, 1963, P.L. 653.

*when, she chooses to seek out the Advisory Board's advice and assistance*." Majority, slip op. at 10 (emphasis in original).

"[I]n determining whether language is clear and unambiguous, we must assess it in the context of the overall statutory scheme, construing all sections with reference to each other, not simply examining language in isolation." *Whitmoyer v. Workers' Comp. Appeal Bd. (Mountain Country Meats)*, 186 A.3d 947, 954 (Pa. 2018). While the Majority finds that Section 2.1(e) renders the Secretary's Section 7 obligation to consult the Advisory Board optional, a plain reading of Section 2.1(e) supports the exact opposite conclusion. While Section 2.1(e)(1) requires the Advisory Board to consult with the Secretary regarding any matter arising under the Act at the Secretary's request, Section 2.1(e)(2) specifically directs the Advisory Board to advise and assist the Secretary in carrying out his duties under Section 7 and contains no "at his request" caveat. This makes good sense, and lines up seamlessly with the legislative directive contained in Section 7 – that the Secretary heed the advice and assistance of the Advisory Board before rendering a prevailing wage determination. If the legislature intended the Advisory Board to assist the Secretary *only* upon request, the language of Section 2.1(e)(1) would sufficiently effectuate that goal, rendering Section 2.1(e)(2) superfluous. *See* 1 Pa.C.S. 1921(a) ("Every statute shall be construed, if possible, to give effect to all its provisions.").

The conclusion that consultation with the Advisory Board is only required if and when the Secretary so chooses cannot be squared with a plain language reading of Section 7 or Section 2.1(e). To reach this result, the Majority essentially writes out the words "after consultation with the advisory board" in Section 7 and either adds "at his request" to Section 2.1(e)(2), or writes subsection (e)(2) out completely. We can neither add nor subtract statutory language. *See*

*Hommrich*, 344 A.3d at 131 ("we should not insert words into [a statute] that are plainly not there"); *see also Matos v. Geisinger Med. Ctr.*, 334 A.3d 288, 311 (Pa. 2025) ("[a]s a matter of statutory interpretation, although one is admonished to listen attentively to what a statute says [;][o]ne must also listen attentively to what it does not say") (internal quotation and citation omitted).

Because I find the language in Section 7 free and clear of all ambiguity, I would hold that the Board erred in concluding that the Secretary's duty to consult with the Advisory Board before issuing a prevailing wage determination is optional. Accordingly, I would vacate the Board's order and remand for further proceedings that adhere to the process set forth by our General Assembly.

MATTHEW S. WOLF, Judge

Judges McCullough and Wallace join.

MSW-5